Christina Goodrich (SBN 261722)
christina.goodrich@klgates.com
Connor J. Meggs (SBN 336159)
connor.meggs@klgates.com
K&L GATES LLP
10100 Santa Monica Boulevard
Eighth Floor
Los Angeles, CA 90067
Telephone: +1 310 552 5000
Facsimile: +1 310 552 5001

*Attorneys for Plaintiff*
*Entropic Communications, LLC*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ENTROPIC COMMUNICATIONS, LLC,<br><br>        Plaintiff,<br><br>    v.<br><br>COMCAST CORPORATION;<br>COMCAST CABLE<br>COMMUNICATIONS, LLC; AND<br>COMCAST CABLE<br>COMMUNICATIONS MANAGEMENT,<br>LLC,<br><br>        Defendants. | Case No. 2:23-cv-01048<br><br>**ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT** |

Plaintiff, Entropic Communications, LLC ("Entropic"), files this complaint for patent infringement against Comcast Corporation ("Comcast Corp."); Comcast Cable Communications, LLC ("Comcast Communications"); and Comcast Cable Communications Management, LLC ("Comcast Management"), (collectively "Comcast") and in support thereof alleges as follows:

1.     Around the turn of the millennium, cable and satellite providers were eager to deploy new and improved services, but they faced a big problem. The providers needed a high-speed data network inside buildings to deliver those services to various rooms. With existing technology, this meant installing new cabling inside each premises to carry the network. Aside from the costly materials themselves, technicians would be forced to spend hours planning the work, cutting and drilling into walls, and fishing cables throughout a building, all while doing so in ways customers might tolerate. The costs would run into the billions of dollars.

2.     A group of inventors had a vision: what if they could repurpose the already-existing coaxial cables common in buildings to do the job? The challenges were daunting. Existing coaxial cabling was never intended to work this way. The mess of existing coax topologies in homes and businesses was a formidable barrier. The splitter devices used to distribute legacy TV obstructed signals from room-to-room. Making it all work would require nothing less than the invention of a new networking architecture founded upon a host of new technologies.

3.     They    succeeded.    The    inventors'    company,    called    Entropic Communications Inc. ("Entropic Inc."), made the technology work. The company was awarded a portfolio of patents for the advances that made it possible. And the company spearheaded forming a new industry standard for the architecture, commonly called MoCA.

4.     Today, MoCA is the backbone of data and entertainment services for tens of millions of customers. MoCA is widely used by every major provider in the industry, saving them billions of dollars in costs and avoiding the hassle of re-wiring for providers

and customers alike. Unfortunately, the defendants take advantage of MoCA without paying appropriate licensing fees for the technology. This lawsuit is about redressing that wrong.

5.     This is a civil action arising under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, including specifically 35 U.S.C. § 271, based on the defendants' infringement of U.S. Patent Nos. 7,295,518 (the "'518 Patent"), 7,594,249 (the "'249 Patent") (together the "Network Patents"); U.S. Patent Nos. 7,889,759 (the "'759 Patent"), 8,085,802 (the "'802 Patent") (together the "Node Admission Patents"); U.S. Patent Nos. 9,838,213 (the "'213 Patent"), 10,432,422 (the "'422 Patent") (together the "PQoS Flows Patents"); U.S. Patent Nos. 8,631,450 (the "'450 Patent"), 8,621,539 (the "'539 Patent") (together the "Link Maintenance Patents"); U.S. Patent No. 8,320,566 (the "'0,566 Patent" or the "OFDMA Patent"); U.S. Patent No. 10,257,566 (the "'7,566 Patent" or the "Network Coordinator Patent"); U.S. Patent No. 8,228,910 (the "'910 Patent" or the "Packet Aggregation Patent"); U.S. Patent No. 8,363,681 (the "'681 Patent" or the "Clock Sync Patent") (collectively all of the patents are referred to herein as the "Patents-in-Suit" or "Asserted Patents"). These patents incorporate various elements of technology set forth in the Multimedia over Coax Alliance standards (the "MoCA" standards)[1].

## **THE PARTIES**

6.     Entropic is a Delaware limited liability company with an office at 7150 Preston Road, Suite 300, Plano, Texas 75024.

7.     Entropic is the owner by assignment to all right, title, and interest to the Patents-in-Suit. Entropic is the successor-in-interest for the Patents-in-Suit.

---

[1] Each version of the MoCA standards is referred to herein as "MoCA 1.0," "MoCA 1.1," and "MoCA 2.0."

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

8.    Upon information and belief, Comcast Corp. is a corporation organized and existing under the laws of Pennsylvania, with a principal place of business at 1701 JFK Boulevard, Philadelphia, Pennsylvania, 19103.

9.    Comcast Corp. has, as its registered agent in California, CT Corporation System, 330 N. Brand Blvd., Suite 700, Glendale, California, 91203.

10.    Comcast Corp., along with the other defendants, develops, markets, sells, offers for sale and/or provides "Comcast" and "Xfinity" branded cable television services and equipment to customers.

11.    Comcast Communications is a limited liability company organized and existing under the laws of Delaware, with a principal place of business at 1701 JFK Boulevard, Philadelphia, Pennsylvania, 19103. Upon information and belief, Comcast Communications is a subsidiary of Comcast Corp.

12.    Comcast Communications has, as its registered agent in California, CT Corporation System, 330 N. Brand Blvd., Suite 700, Glendale, California, 91203.

13.    Comcast Communications, along with the other defendants, develops, markets, sells, offers for sale and/or provides "Comcast" and "Xfinity" branded cable television services and equipment to customers.

14.    Comcast Management is a limited liability company organized and existing under the laws of Delaware, with a principal place of business at 1701 JFK Boulevard, Philadelphia, Pennsylvania, 19103. Upon information and belief, Comcast Management, is a subsidiary of Comcast Corp.

15.    Comcast Management has, as its registered agent in California, CT Corporation System, 330 N. Brand Blvd., Suite 700, Glendale, California, 91203.

16.    Comcast Management, along with the other defendants, develops, markets, sells, offers for sale and/or provides "Comcast" and "Xfinity" branded cable television services and equipment to customers.

17.    Comcast Corp. and/or Comcast Communications owns or leases, and maintains and operates several stores in this district by and through subsidiary limited

-4-
ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

liability companies that they own, manage and control, including Comcast of Santa Maria, LLC and Comcast of Lompoc LLC. Upon information and belief, Comcast Corp. and/or Comcast Communications (and/or personnel employed by them) negotiates and signs agreements on behalf of each of these entities.

18.    Upon information and belief, Comcast Corp. and/or Comcast Communications are the corporate managers of their subsidiary LLCs that own or lease property in this district, and that own, store, sell, demonstrate, and lease equipment in this district. Comcast Corp. and/or Comcast Communications have the right to exercise near total control of each entity's operations through its LLC agreements with each entity.

19.    In each of those stores, Comcast Corp. and/or Comcast Communications owns and stores equipment such as modems and set top boxes ("STBs") and demonstrates services provided via those products to Comcast customers by and through subsidiary limited liability companies that it manages and controls.

20.    Upon information and belief, Comcast Corp. and/or Comcast Communications employs personnel that install, service, repair and/or replace equipment, as appropriate, in this district by and through subsidiary limited liability companies that it manages and controls.

21.    Upon information and belief, Comcast Corp. and/or Comcast Communications have two wholly owned subsidiaries in this Judicial District of Central California that serve as their agents.

22.    Comcast of Santa Maria, LLC ("Comcast Santa Maria") is a limited liability company organized and existing under the laws of Pennsylvania, with a principal place of business at 1701 JFK Boulevard, Philadelphia, Pennsylvania, 19103. Comcast of Santa Maria, LLC is a subsidiary of Comcast Corp.

23.    Comcast Santa Maria, along with the other defendants, markets, sells, offers for sale and/or provides "Comcast" and "Xfinity" branded cable television services and equipment to customers.

-5-
ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

24. Comcast of Lompoc, LLC ("Comcast Lompoc") is a limited liability company organized and existing under the laws of Pennsylvania, with a principal place of business at 1701 JFK Boulevard, Philadelphia, Pennsylvania, 19103. Comcast of Lompoc, LLC is a subsidiary of Comcast Corp.

25. Comcast Lompoc, along with the other defendants, markets, sells, offers for sale and/or provides "Comcast" and "Xfinity" branded cable television services and equipment to customers.

26. Upon information and belief, Comcast Communications, Comcast, Management, Comcast Santa Maria, and Comcast Lompoc are the agents of Comcast Corp. Upon information and belief, Comcast Corp. has complete and total control over its agents Comcast Communications, Comcast Management, Comcast Santa Maria, and Comcast Lompoc. Upon information and belief, Comcast Corp. shares management, common ownership, advertising platforms, facilities, distribution chains and platforms, stores, and accused product lines and products involving related technologies with its agents, including at least Comcast Communications, Comcast Management, Comcast Santa Maria, and Comcast Lompoc.

27. For example, Comcast Corp., Comcast Communications, Comcast Management, Comcast Santa Maria, and Comcast Lompoc all have the same principal place of business at 1701 JFK Boulevard, Philadelphia, Pennsylvania, 19103.

28. The Comcast "Xfinity Residential Services Agreement" purports to bind Comcast's customers, including those customers in this Judicial District to an agreement with Comcast Communications for *inter alia*, the Accused Services (defined below) that Comcast's customers receive through the infringing use of the Accused MoCA Instrumentalities (defined below).[2] This agreement further provides that an entity other than Comcast Communications provides the services. Upon information and belief, the

---

[2] https://www.xfinity.com/Corporate/Customers/Policies/SubscriberAgreement

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

entity that provides the services to Comcast's customers and subscribers is Comcast Management.

29.    Comcast Management further shares a leadership team with Comcast Corp.[3] For example, Brian Roberts is the Chairman and Chief Executive Officer of both Comcast Management and Comcast Corp.; Daniel Murdock is Executive Vice President and Chief Accounting Officer of both Comcast Corp. and Comcast Management; Francis Buono is Executive Vice President of Legal Regulatory Affairs and Senior Deputy General Counsel of both Comcast Corp. and Comcast Management; and Karen Buchholz is Executive Vice President, Administration of both Comcast Corp. and Comcast Management.

30.    As further alleged herein, this Court has personal jurisdiction over the defendants and venue is proper in this Judicial District.

**PRESUIT DISCUSSIONS**

31.    Prior to filing this Complaint, Entropic sent a communication by physical means to Comcast on August 9, 2022, in an attempt to engage Comcast and/or its agents in good faith licensing discussions regarding Entropic's patent portfolio, including the Patents-in-Suit. Comcast replied to the communication on October 10, 2022, asking for additional information. On December 23, 2022 and January 2, 2023, Entropic sent Comcast another communication by both physical and electronic means regarding a separate license to Entropic's patents for the field of the standardized networking technology commonly called MoCA, and also seeking to discuss with

---

[3] *Compare* names found in Exhibit A to the attached https://www.cpuc.ca.gov/-/media/cpuc-website/divisions/communications-division/documents/video-franchising-and-broadband-analysis/video-franchising-main/applications-received--by-the-puc/2022/20220926-comcast-48a/comcast-48a-application.pdf *with* the biographies of the identified personnel at Comcast's corporate leadership website, https://corporate.comcast.com/company/leadership

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

Comcast a typical non-disclosure agreement in order to share such information. Comcast has not responded to the December 23, 2022 and January 2, 2023 communications.

## ENTROPIC'S LEGACY AS AN INNOVATOR

32.     Entropic Inc., the predecessor-in-interest to Entropic as to the Patents-in-Suit, was founded in San Diego, California in 2001 by Dr. Anton Monk, Itzhak Gurantz, Ladd El Wardani and others. Entropic Inc. was exclusively responsible for the development of the initial versions of the MoCA standards, including MoCA 1.0, ratified in 2006, MoCA 1.1, ratified in 2007, and was instrumental in the development of MoCA 2.0, ratified in 2010. It also developed Direct Broadcast Satellite ("DBS") Outdoor Unit ("ODU") single wire technology, and System-on-Chip ("SoC") solutions for set-top boxes (STBs) in the home television and home video markets.

33.     Under the technical guidance of Dr. Monk, Entropic Inc. grew to be publicly listed on the NASDAQ in 2007. After the public listing, the company acquired RF Magic, Inc. in 2007, a company specializing in DBS ODU technology and related hardware.

34.     Additional growth between 2007 and 2015 bolstered the technical expertise of Entropic Inc. with respect to signal acquisition, stacking, filtering, processing, and distribution for STBs and cable modems.

35.     For years, Entropic Inc. pioneered innovative networking technologies, as well as television and internet related technologies. These technologies simplified the installation required to support wideband reception of multiple channels for demodulation, improved home internet performance, and enabled more efficient and responsive troubleshooting and upstream signal management for cable providers. These innovations represented significant advances in the field, simplified the implementation of those advances, and reduced expenses for providers and customers alike.

36.     In 2015, MaxLinear, Inc. ("MaxLinear")—a leading provider of radio-frequency, analog, digital, and mixed-signal semiconductor solutions—acquired

-8-

Entropic Inc., and the pioneering intellectual property developed by Dr. Monk and his team.

37.    In 2021, Plaintiff Entropic was established and MaxLinear transferred to Entropic a portfolio of intellectual property representing the Entropic and MaxLinear innovation in the cable and satellite services markets.

## MOCA® AND THE MOCA® STANDARDS

38.    MoCA is an alliance of companies that operate in the field of technology associated with providing multimedia services, such as television operators, consumer electronics, manufacturers, semiconductor vendors, and original equipment manufacturers (OEMs). MoCA has developed and published a standard governing the operation of devices using existing coaxial cable.

39.    By the year 2000, cable and satellite providers were facing the problem of distributing services as data between the various locations in a dwelling where desired by customers. This would require a full digital network, capable of communication between any node in the network, in any direction. Traditional computer networking such as Ethernet provided some of the functionality, but the cabling necessary for Ethernet or the like was (and is) very expensive to install.

40.    At the time, millions of dwellings and businesses across the United States often already had existing coaxial cable ("coax") deployed throughout the premises to provide traditional television programming services to various rooms. However, this cabling was not designed or envisaged as a two-way and point-to-point network, nor a network capable of carrying high speed digital data traffic. The coax was deployed as a "tree" topology which simply splits the signal coming from an external source (the cable or satellite feed) for distribution of video content to the various locations on the premises in the "downlink" direction only. Thus, it was impossible to simply use this existing cable to make the new point-to-point high-quality network connections between devices located on the premises desired by the cable and satellite providers.

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

41.     Entropic Inc. tackled the problem and managed what was considered unlikely or impossible—to make a high-speed point-to-point digital communication network using existing coax installations. This required substantial inventive effort that is embodied by the Patents in suit. For example, one of the significant challenges faced by Entropic Inc. was the varying nature of the exact topology of existing on-premises coax infrastructure that a network architecture would have to handle. The topology and types of devices (such as passive or active splitters, their characteristics, etc.) greatly influence the environment for signals transferred from node to node.

42.     Entropic Inc. later founded an organization to standardize the networking architecture and promote its use. This became known as the Multimedia over Coax Alliance, or "MoCA." That acronym has also come into common usage as the name given to the networking architecture itself—now embodied in the MoCA standards. The technology defined in the MoCA standards enables the point-to-point high-quality network so badly needed by cable and satellite providers. Crucially it also provides the operators the ability to deploy their services without the enormously costly effort of installing Ethernet or similar cabling to carry the data.

43.     There have been several iterations of the MoCA standards, beginning with MoCA 1.0, which was ratified in 2006. Since 2006, MoCA has ratified subsequent versions of the MoCA standards, including MoCA 1.1 and MoCA 2.0.

44.     The MoCA standards ensure network robustness along with inherent low packet error rate performance and very low latency that is relatively independent of network load. The logical network model of the MoCA network is significantly different from the underlying on-premises legacy coaxial network. For example, due to the effects of splitter jumping and reflections, the channel characteristics for a link between two MoCA nodes may be dramatically different from a link between any other two MoCA nodes.

45.     **The Network Patents (the '518 and '249 Patents)** and the **OFDMA Patent (the '0,566 Patent)** describe MoCA networks, including how data

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

communicated via MoCA networks is modulated by full-mesh pre-equalization techniques known as Adaptive Constellation Multitone (ACMT), a form of OFDM modulation.

46.    As described in the **Network Coordinator Patent (the '7,566 Patent) and the Node Admission Patents (the '759 and '802 Patents)**, a particular MoCA node, known as a Network Coordinator, controls the admission of nodes to the MoCA Network. The Network Coordinator sends out a variety of data packets using a modulation profile that all the MoCA nodes can receive. For broadcast and multicast transmissions, a broadcast bitloading profile can be calculated and used for each node receiving the transmissions in the MoCA network.

47.    MoCA nodes use a modulation profile for every point-to-point link. A variety of probe messages are transmitted by the MoCA nodes and used to create modulation profiles, optimize performance, and allow for various calibration mechanisms. In order to maintain network performance as network conditions change, the MoCA standards define techniques to maintain optimized point-to-point and broadcast links between all of the MoCA nodes. The **Link Maintenance Patents (the '450 and '539 Patents)** describe link maintenance operations involving the processing of probe messages at regular intervals to recalculate parameters such as modulation profile and transmit power.

48.    This MoCA network allows for devices (MoCA nodes) connected to a MoCA network to communicate data formatted in a variety of formats. **The Packet Aggregation Patent (the '910 Patent)**, for example, describes the communication of data packets in an Ethernet format, via the on-premises coaxial network without the need to deploy a separate physical network on the premises.

49.    **The Clock Sync Patent (the '681 Patent)** describes the synchronization of the clocks of each MoCA node in the network with a master clock provided by the Network Coordinator as these transmissions are fully coordinated.

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

50.    The MoCA standards and the **PQoS Flow Patents (the '213 and '422 Patents)** describe how particular MoCA nodes can request additional network resources and/or transmission opportunities. This allows the MoCA node to transfer data more quickly across the MoCA network by borrowing resources that have been scheduled to other MoCA nodes.

51.    These technological developments enable users to avoid the significant costs associated with rewiring their home or business in order to deploy a number of devices throughout the premises. Further, these technological developments allow services requiring reliable, high-speed data and video communications to be provided to the user while utilizing the on-premises coaxial network already present in the user's home or business.

52.    Entropic Inc. spearheaded MoCA, and its founders are the inventors of several patents that cover various mandatory aspects of the MoCA standards. In other words, by conforming to the MoCA standards, a product necessarily practices those patents, either by itself, as a part of a MoCA-compliant system, or in the method in which it operates.

## THE ACCUSED MOCA INSTRUMENTALITIES AND ACCUSED SERVICES

53.    Comcast utilizes various instrumentalities, deployable as nodes in a MoCA-compliant coaxial cable network.

54.    Comcast deploys the instrumentalities to, *inter alia*, provide a whole-premises DVR network over an on-premises coaxial cable network, with components including gateway devices (including, but not limited to, the XG1-A, XG1v3, XG1v4, XG2v2, and devices that operate in a similar matter) and client devices (including, but not limited to, the Arris DCX3200, Arris MR150CNM, Pace PR150BNM, Pace PX032ANI, Pace PXD01ANI, Samsung SR150BNM, and devices that operate in a similar manner) as nodes operating with data connections compliant with MoCA 1.0, 1.1, and/or 2.0. Such components are referred to herein as the "Accused MoCA

Instrumentalities." The MoCA-compliant services offered by Comcast employing the Accused MoCA Instrumentalities, including the operation of a MoCA-compliant network in which such instrumentalities are deployed, are referred to herein as the "Accused Services."

55.    An exemplary illustration of the topology of various Accused MoCA Instrumentalities in a Comcast deployment is pictured below.[4]



Figure 5 - A Typical Mixed MoCA/WiFi Home Network

56.    Upon information and belief, the Accused MoCA Instrumentalities form networks over a coaxial cable network in accordance with MoCA 1.0, 1.1, and/or 2.0.

57.    Comcast's business includes the provision of Accused Services to its customers, by means of the Accused MoCA Instrumentalities.

---

[4] This is an example of the products used in the infringing network and is not intended to limit the scope of products accused of infringement.

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

58.    Most commonly, the Accused Services are offered and provided in exchange for fees paid to Comcast.

59.    Comcast itself also sometimes tests and demonstrates the Accused Services, by means of the Accused MoCA Instrumentalities.

60.    In some deployments of the Accused MoCA Instrumentalities and the performance of the Accused Services, Comcast uses one or more of: the XG1-A, XG1v3, XG1v4, XG2v2, Arris DCX3200, Arris MR150CNM, Pace PR150BNM, Pace PX032ANI, Pace PXD01ANI, Samsung SR150BNM and similarly operating devices, to provide signals, programming and content utilizing a data connection carried over a coaxial cable network in accordance with the MoCA standards.

61.    In October 2010, Chris Albano, in his capacity as Comcast's senior director/CPE and home networking stated, "The whole world is moving to MoCA. We at Comcast have made the decision that all new products will have MoCA embedded into them."[5]

62.    Upon information and belief, Mr. Albano and/or other authorized Comcast personnel authorized the publication and attribution of the preceding quotation to Mr. Albano.

63.    Mr. Albano further stated in October 2010, in his capacity as Comcast's senior director/CPE and home networking that, "everyone is moving toward building MoCA in new devices. . . When you put MoCA (filters) in a home, you would be blocking MoCA energy and the home networking revolution."[6]

---

[5]    https://www.cablefax.com/archives/tech-workshops-home-networking-upstream-capacity-and-doing-the-splits

[6]    https://www.cablefax.com/archives/tech-workshops-home-networking-upstream-capacity-and-doing-the-splits

-14-

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

64.    Upon information and belief, Mr. Albano and/or other authorized Comcast personnel authorized the publication and attribution of the preceding quotation to Mr. Albano.

65.    Comcast was aware of its deployment and use of MoCA at least as early as the later of its involvement with MoCA and six years prior to the filing of this complaint.

66.    Upon information and belief, Comcast was aware that Entropic Inc. invented technology underlying the MoCA standards. Accordingly, such Entropic, Inc. technology would be incorporated into any instrumentality compliant with the MoCA standards.

67.    Upon information and belief, Comcast and/or its subsidiaries was a member of MoCA beginning in 2010, which provided Comcast full access to all then-existing versions of the MoCA standards.

68.    Upon information and belief, Comcast was aware that Entropic Inc. intended to and did pursue patent protection for technology related to MoCA, at least as early as the later of its involvement with MoCA and the issue date of the Asserted Patents.

69.    When Comcast obtained, deployed and/or used instrumentalities with MoCA functionality not provided by Entropic Inc., Comcast knew or should have known that Entropic Inc. had provided no authorization for such activities, for example by a patent license.

70.    Upon information and belief, when Comcast obtained, deployed and/or used instrumentalities with MoCA functionality not provided by Entropic Inc., Comcast failed to investigate whether Entropic Inc. authorized the use of Entropic Inc.'s patents for such activity.

71.    Alternatively, upon information and belief, when Comcast obtained, deployed and/or used instrumentalities with MoCA functionality not provided by Entropic Inc., Comcast knew the use of Entropic Inc.'s patents for such activity was not authorized by Entropic Inc.

-15-

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

**JURISDICTION AND VENUE**

72.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) because the claims herein arise under the patent laws of the United States, 35 U.S.C. § 1 et seq., including 35 U.S.C. § 271.

73.    Venue in this Judicial District is proper under 28 U.S.C. § 1400(b) because Comcast has regular and established places of business in this District. The defendants, by themselves and/or through their agents have committed acts of patent infringement within the State of California and in this Judicial District by making, importing, using, selling, offering for sale, and/or leasing the Accused MoCA Instrumentalities, as well as Accused Services employing the Accused MoCA Instrumentalities that comply with one or more of MoCA 1.0, 1.1, and/or 2.0.

74.    This Court has general personal jurisdiction over Comcast Corp. because it conducts systematic and regular business within the State of California by, *inter alia* providing cable television, internet, and phone services to businesses and residents throughout this State. Comcast Corp.'s website states that, "Comcast is deeply committed to California, where our nearly 5,000 employees serve more than 3 million customers throughout the state."[7]

75.    Upon information and belief, Comcast Management has a regular and established place of business in the State of California at 3055 Comcast Place, Livermore, California 94551.

76.    The Court has personal jurisdiction over Comcast Corp., Comcast Communications, and Comcast Management because they have committed acts of infringement within the State of California and within this Judicial District through, for example, making infringing networks using the Accused MoCA Instrumentalities, and

---

[7]
https://california.comcast.com/about/#:%7E:text=Comcast%20is%20deeply%20committed%20to,smart%20home%E2%80%9D%20and%20phone%20service

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

using the Accused MoCA Instrumentalities to provide the Accused Services in the State of California and this Judicial District.

77.    Upon information and belief, Comcast Corp., Comcast Communications, and/or Comcast Management, by themselves and/or through their agents offer various telecommunication services throughout the United States. Comcast operates and maintains a nationwide television and data network through which it sells, leases, and offers products and services, including the Accused MoCA Instrumentalities, to businesses, consumers, and government agencies. Through its subsidiaries, Comcast Corp. offers to sell, sells, and provides "Comcast" and "Xfinity" branded products and services, including, set top boxes and digital video, audio, and other content services to customers. Subscribers to Comcast's television services receive one or more receivers and/or set-top boxes, within this Judicial District.

78.    Upon information and belief, the Accused Services are provided using the Accused MoCA Instrumentalities.

79.    Upon information and belief, Comcast Corp., Comcast Communications, and/or Comcast Management, by themselves and/or through their agents Comcast Santa Maria and/or Comcast Lompoc operate their businesses through *inter alia* offices, warehouses, storefronts, and/or other operational locations within this Judicial District, including, for example, at the Xfinity by Comcast stores located in this Judicial District at 685 East Betteravia Rd., Santa Maria, California, 93454; and 1145 N. H Street, Suite B, Lompoc, California 93436. Comcast holds out these locations as its own through the use of branding on the locations themselves.

80.    Comcast lists these Xfinity by Comcast stores on its website and holds them out as places where customers can obtain the Accused MoCA Instrumentalities.

81.    Upon information and belief, one or more of the defendants own and/or leases the premises where these Xfinity by Comcast stores are located.

82.    Upon information and belief, these Xfinity by Comcast stores are staffed by persons directly employed by Comcast, many of whom live in this Judicial District.

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

83.     Upon information and belief, one or more of the defendants has engaged in regular and established business at physical places within this Judicial District such as at these two Xfinity by Comcast stores.

84.     Upon information and belief, Comcast employs and/or contracts with persons and directs them to install, service, repair, and/or replace equipment, as appropriate, in this Judicial District.

85.     Upon information and belief, in each of these stores and/or service centers, Comcast owns and stores the Accused MoCA Instrumentalities and demonstrates the Accused Services provided via those products to Comcast customers.

86.     Comcast has adopted and ratified the Comcast and Xfinity-branded locations identified in this Judicial District. The Comcast website advertises Comcast service packages available from Comcast-authorized retailers in this Judicial District, and prospective employees can find Comcast job listings in this Judicial District. Furthermore, the "corporate" section of Comcast's main website has a section containing "Special Information Regarding California Residents' Privacy Rights," which demonstrates that Comcast is purposefully holding itself out as providing products and services in California.

87.     Upon information and belief, Comcast Corp., and/or Comcast Communications, collectively, by themselves and/or through their agent Comcast Management provides the Accused Services throughout the United States and in this Judicial District.

88.     Upon information and belief, Comcast Corp., and/or Comcast Management, collectively, by themselves, and/or through their agent, Comcast Communications sells, and offers for sale, and provides the Accused Services and the Accused MoCA Instrumentalities throughout the United States and in this Judicial District.

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

89.    The Accused Services are available for subscription from various physical stores, including those at 685 East Betteravia Rd., Santa Maria, California, 93454; and 1145 N. H Street, Suite B, Lompoc, California 93436.

90.    The Accused MoCA Instrumentalities, provided by Comcast to supply the Accused Services are provided to customers in this Judicial District and may be obtained by customers from physical locations in this District, including those at 685 East Betteravia Rd., Santa Maria, California, 93454; and 1145 N. H Street, Suite B, Lompoc, California 93436.

91.    Venue is further proper because Comcast has committed and continues to commit acts of patent infringement in this Judicial District, including, making, using, importing, offering to sell, and/or selling Accused Services and Accused MoCA Instrumentalities, and MoCA networks, and thereafter providing Accused Services in this Judicial District, including by Internet sales and sales via retail and wholesale stores. Furthermore, for example, Comcast deploys Accused MoCA Instrumentalities to many thousands of locations (customer premises) in this Judicial District and subsequently, by means of those Accused MoCA Instrumentalities, uses the claimed inventions at those locations in this Judicial District. Comcast infringes by inducing and contributing to acts of patent infringement in this Judicial District and/or committing at least a portion of any other infringements alleged herein in this Judicial District.

92.    Comcast continues to conduct business in this Judicial District, including the acts and activities described in the preceding paragraph.

## COUNT I

### (Infringement of the '518 Patent)

93.    Entropic incorporates by reference each allegation of Paragraphs 1 through 92.

94.    The '518 Patent duly issued on November 13, 2007 from an application filed December 18, 2002, an application filed August 29, 2002 and, *inter alia*, a provisional application filed August 30, 2001.

-19-

95.     Entropic owns all substantial rights, interest, and title in and to the '518 Patent, including the sole and exclusive right to prosecute this action and enforce the '518 Patent against infringers, and to collect damages for all relevant times.

96.     The '518 Patent is one of the Network Patents, and is generally directed to, *inter alia,* broadband local area data networks using on-premises coaxial cable wiring for interconnection of devices. Probe messages can be "sent between devices to characterize the communication channel and determine optimum bit loading" for communicating data between devices. '518 Patent, Abstract. The '518 Patent has four claims, of which claims 1 and 4 are independent. At least these claims of the '518 Patent are directed to the creation of the MoCA network using the on-premises coaxial cable wiring. A true and accurate copy of the '518 Patent is attached hereto as Exhibit A.

97.     The '518 Patent is directed to patent-eligible subject matter pursuant to 35 U.S.C. § 101.

98.     The '518 Patent is valid and enforceable, and presumed as such, pursuant to 35 U.S.C. § 282.

99.     Comcast deploys one or more of the Accused MoCA Instrumentalities (e.g. XG1-A, XG1v3, XG1v4, XG2v2, and Arris DCX3200, Arris MR150CNM, Pace PR150BNM, Pace PX032ANI, Pace PXD01ANI, and/or Samsung SR150BNM and similarly operating devices) in connection with operating and providing the Accused Services.

100.    The Accused MoCA Instrumentalities deployed by Comcast to customer premises remain the property of Comcast while deployed.

101.    The Accused MoCA Instrumentalities operate while deployed in a manner controlled and intended by Comcast.

102.    As set forth in the attached non-limiting claim chart (Exhibit B), any product or system operating in a MoCA network compliant with the charted provisions of MoCA 1.0, 1.1, and/or 2.0 necessarily infringes at least claim 1 of the '518 Patent.

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

103.   Each aspect of the functioning of the Accused MoCA Instrumentalities described in the claim chart operates while deployed to customer premises in a manner controlled and intended by Comcast.

104.   Comcast provides no software, support or other facility to customers to modify any aspect of the functioning described in the claim chart of the Accused MoCA Instrumentalities while deployed to customer premises.

105.   The Accused MoCA Instrumentalities are compliant with the provisions of MoCA 1.0, 1.1., and/or 2.0, as described in the '518 Patent claim chart, Exhibit B.

106.   Comcast therefore directly infringes at least claim 1 of the '518 Patent by using the Accused MoCA Instrumentalities to provide Accused Services to customers.

107.   Comcast directly infringes at least claim 1 of the '518 Patent when it, for example, uses the Accused MoCA Instrumentalities to test, demonstrate or otherwise provide Accused Services.

108.   Comcast directly infringes at least claim 1 of the '518 Patent by making, importing, selling, and/or offering for sale the Accused MoCA Instrumentalities in connection with providing the Accused Services over an on-premises coaxial cable network, which meets each and every limitation of at least claim 1 of the '518 Patent.

109.   Comcast had knowledge of '518 Patent no later than its receipt of Entropic's communications sent to Comcast on August 9, 2022.

110.   Comcast has been aware that it infringes the '518 Patent since at least as early as receipt of Entropic's communications sent to Comcast on August 9, 2022.

111.   Comcast has known of or has been willfully blind to the '518 Patent since before the August 9, 2022 communications from Entropic.

112.   The '518 Patent issued while or before Comcast was a member of MoCA.

113.   Because of Comcast's knowledge of Entropic Inc.'s work and contributions related to MoCA technology, Comcast had knowledge of the '518 Patent before August 9, 2022 or was willfully blind to its existence.

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

114. The claims of the '518 Patent are essential to practicing at least MoCA standards versions 1.0, 1.1, and/or 2.0.

115. Comcast knew, or was willfully blind to the fact that the technology of the '518 Patent directly relates to networking over coaxial cable, including MoCA, at least as early as Comcast became aware of the existence of the '518 Patent. Because of its familiarity with, and access to, the MoCA standards, Comcast knew, or was willfully blind to the fact, that use (by Comcast or its customers) of instrumentalities compliant with MoCA 1.0, 1.1, and/or 2.0 to deliver Comcast services would necessarily infringe one or more claims of the '518 Patent.

116. Since learning of the '518 Patent and its infringing activities, Comcast has failed to cease its infringing activities.

117. Comcast's customers and subscribers directly infringe at least claim 1 of the '518 Patent by using the Accused MoCA Instrumentalities in connection with the Accused Services provided by Comcast.

118. Comcast actively induces its customers' and subscribers' direct infringement by providing the Accused Services and associated support.

119. For example, Comcast actively induces infringement of at least claim 1 of the '518 Patent by providing the Accused MoCA Instrumentalities to Comcast customers with specific instructions and/or assistance (including installation and maintenance) regarding the instantiation of a MoCA network and the use of the Accused MoCA Instrumentalities in a manner that infringes the '518 Patent.

120. Comcast aids, instructs, supports, and otherwise acts with, the intent to cause an end user to make and/or use the MoCA network and/or use the Accused MoCA Instrumentalities in a manner that infringes each and every element of at least claim 1 of the '518 Patent.

121. Additionally, Comcast contributes to the customers' and subscribers' direct infringement. Comcast provides at least the Accused MoCA Instrumentalities that create

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

and are at least substantially all of a MoCA network to be used to infringe at least claim 1 of the '518 Patent.

122.    The Accused MoCA Instrumentalities have no substantial noninfringing uses. When an end user uses the Accused MoCA Instrumentalities in connection with the Accused Services provided by Comcast, the end user necessarily directly infringes at least claim 1 of the '518 Patent. The Accused MoCA Instrumentalities are therefore especially made or especially adapted for use in an infringing manner.

123.    Comcast's inducement of, and contribution to, the direct infringement of at least claim 1 of the '518 Patent has been, and is, continuous and ongoing through the acts described above in connection with Comcast's provision of the Accused Services.

124.    Comcast's infringement of the '518 Patent is, has been, and continues to be willful, intentional, deliberate, and/or in conscious disregard for Entropic's rights under the patent.

125.    Entropic has been damaged as a result of the infringing conduct alleged above. Comcast is liable to Entropic in an amount that compensates Entropic for Comcast's infringement, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

126.    Upon information and belief, there is no duty to mark any instrumentality with the '518 Patent in accordance with 35 U.S.C. § 287.

## COUNT II

### (Infringement of the '249 Patent)

127.    Entropic incorporates by reference each allegation of Paragraphs 1 through 126.

128.    The '249 Patent duly issued on September 22, 2009 from an application filed July 21, 2001, and a provisional application filed May 4, 2001.

129.    Entropic owns all substantial rights, interest, and title in and to the '249 Patent, including the sole and exclusive right to prosecute this action and enforce the '249 Patent against infringers, and to collect damages for all relevant times.

-23-
ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

130.   The '249 Patent is one of the Network Patents, and is generally directed to, *inter alia*, broadband cable networks that allow devices to communicate directly over the existing coaxial cable with its current architecture without the need to modify the existing cable infrastructure. Each device communicates with the other devices in the network and establishes parameters to overcome channel impairments in the coaxial cable network. '249 Patent, col. 3, lines 11–22. The '249 Patent has 17 claims, of which claims 1, 5, and 10 are independent. At least these claims of the '249 Patent are directed to the creation of the MoCA network using the on-premises coaxial cable wiring. A true and accurate copy of the '249 Patent is attached hereto as Exhibit C.

131.   The '249 Patent is directed to patent-eligible subject matter pursuant to 35 U.S.C. § 101.

132.   The '249 Patent is valid and enforceable, and presumed as such, pursuant to 35 U.S.C. § 282.

133.   Comcast deploys one or more of the Accused MoCA Instrumentalities (e.g. XG1-A, XG1v3, XG1v4, XG2v2, and Arris DCX3200, Arris MR150CNM, Pace PR150BNM, Pace PX032ANI, Pace PXD01ANI, and/or Samsung SR150BNM and similarly operating devices) in connection with operating and providing the Accused Services.

134.   The Accused MoCA Instrumentalities deployed by Comcast to customer premises remain the property of Comcast while deployed.

135.   The Accused MoCA Instrumentalities operate while deployed in a manner controlled and intended by Comcast.

136.   As set forth in the attached non-limiting claim chart (Exhibit D), any product or system operating in a MoCA network compliant with the charted provisions of MoCA 1.0, 1.1, and/or 2.0 necessarily infringes at least claim 10 of the '249 Patent.

137.   Each aspect of the functioning of the Accused MoCA Instrumentalities described in the claim chart operates while deployed to customer premises in a manner controlled and intended by Comcast.

-24-

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

138.   Comcast provides no software, support or other facility to customers to modify any aspect of the functioning described in the claim chart of the Accused MoCA Instrumentalities while deployed to customer premises.

139.   The Accused MoCA Instrumentalities are compliant with MoCA 1.0, 1.1., and/or 2.0, as described in the '249 Patent claim chart, Exhibit D.

140.   Comcast therefore directly infringes at least claim 10 of the '249 Patent by using the Accused MoCA Instrumentalities to provide Accused Services to customers.

141.   Comcast directly infringes at least claim 10 of the '249 Patent when it, for example, uses the Accused MoCA Instrumentalities to test, demonstrate or otherwise provide Accused Services.

142.   Comcast directly infringes at least claim 10 of the '249 Patent by making, importing, selling, and/or offering for sale the Accused MoCA Instrumentalities in connection with providing the Accused Services over an on-premises coaxial cable network, which meets each and every limitation of at least claim 10 of the '249 Patent.

143.   Comcast had knowledge of the '249 Patent no later than its receipt of Entropic's communications sent to Comcast on August 9, 2022.

144.   Comcast has been aware that it infringes the '249 Patent no later than its receipt of Entropic's communications sent to Comcast on August 9, 2022.

145.   Comcast has known of or has been willfully blind to the '249 Patent since before the August 9, 2022 communications from Entropic.

146.   The '249 Patent issued while or before Comcast was a member of MoCA.

147.   Because of Comcast's knowledge of Entropic Inc.'s work and contributions related to MoCA technology, Comcast had knowledge of the '249 Patent before August 9, 2022 or was willfully blind to its existence.

148.   The claims of the '249 Patent are essential to practicing at least MoCA standards versions 1.0, 1.1, and/or 2.0.

149.   Comcast knew, or was willfully blind to the fact that the technology of the '249 Patent directly relates to networking over coaxial cable, including MoCA, at

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

least as early as Comcast became aware of the existence of the '249 Patent. Because of its familiarity with, and access to, the MoCA standards, Comcast knew, or was willfully blind to the fact, that use (by Comcast or its customers) of instrumentalities compliant with MoCA 1.0, 1.1, and/or 2.0 to deliver Comcast services would necessarily infringe one or more claims of the '249 Patent.

150.   Since learning of the '249 Patent and its infringing activities, Comcast has failed to cease its infringing activities.

151.   Comcast's customers and subscribers directly infringe at least claim 10 of the '249 Patent by using the Accused MoCA Instrumentalities in connection with the Accused Services provided by Comcast.

152.   Comcast actively induces its customers' and subscribers' direct infringement by providing the Accused Services and associated support.

153.   For example, Comcast actively induces infringement of at least claim 10 of the '249 Patent by providing the Accused MoCA Instrumentalities to Comcast customers with specific instructions and/or assistance (including installation and maintenance) regarding the instantiation of a MoCA network and the use of the Accused MoCA Instrumentalities in a manner that infringes the '249 Patent.

154.   Comcast aids, instructs, supports, and otherwise acts with the intent to cause an end user to make and/or use the MoCA network and/or use the Accused MoCA Instrumentalities in a manner that infringes every element of at least claim 10 of the '249 Patent.

155.   Additionally, Comcast contributes to the customers' and subscribers' direct infringement. Comcast provides at least the Accused MoCA Instrumentalities that create and are at least substantially all of a MoCA network to be used to infringe at least claim 10 of the '249 Patent.

156.   The Accused MoCA Instrumentalities have no substantial noninfringing uses. When an end user uses the Accused MoCA Instrumentalities in connection with the Accused Services provided by Comcast, the end user necessarily directly infringes

at least claim 10 of the '249 Patent. The Accused MoCA Instrumentalities are therefore especially made or especially adapted for use in an infringing manner.

157.   Comcast's inducement of, and contribution to, the direct infringement of at least claim 10 of the '249 Patent has been, and is, continuous and ongoing through the acts described above in connection with Comcast's provision of the Accused Services.

158.   Comcast's infringement of the '249 Patent is, has been, and continues to be willful, intentional, deliberate, and/or in conscious disregard for Entropic's rights under the patent.

159.   Entropic has been damaged as a result of the infringing conduct alleged above. Comcast is liable to Entropic in an amount that compensates Entropic for Comcast's infringement, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

160.   Entropic is aware of no obligation to mark any instrumentality with the '249 Patent in accordance with 35 U.S.C. § 287.

## COUNT III

### (Infringement of the '759 Patent)

161.   Entropic incorporates by reference each allegation of Paragraphs 1 through 160.

162.   The '759 Patent duly issued on February 15, 2011 from an application filed July 12, 2004, an application filed August 29, 2002, and, *inter alia* a provisional application filed August 30, 2001.

163.   Entropic owns all substantial rights, interest, and title in and to the '759 Patent, including the sole and exclusive right to prosecute this action and enforce the '759 Patent against infringers, and to collect damages for all relevant times.

164.   The '759 Patent is one of the Node Admission Patents, and is generally directed to, *inter alia*, broadband cable networks that allow devices to communicate directly over the existing coaxial cable with its current architecture without the need to modify the existing cable infrastructure. Each device communicates with the other

-27-

devices in the network and establishes a common modulation scheme between the devices in the network. '759 Patent, Abstract. The '759 Patent has 22 claims, of which claims 1–7, 14, 20–22 are independent. At least these claims of the '759 Patent are directed to a variety of techniques for establishing a modulation scheme for communications between nodes in the MoCA network. A true and correct copy of the '759 Patent is attached hereto as Exhibit E.

165.  The '759 Patent is directed to patent-eligible subject matter pursuant to 35 U.S.C. § 101.

166.  The '759 Patent is valid and enforceable, and presumed as such, pursuant to 35 U.S.C. § 282.

167.  Comcast deploys one or more of the Accused MoCA Instrumentalities (e.g. XG1-A, XG1v3, XG1v4, XG2v2, and Arris DCX3200, Arris MR150CNM, Pace PR150BNM, Pace PX032ANI, Pace PXD01ANI, and/or Samsung SR150BNM and similarly operating devices) in connection with operating and providing the Accused Services.

168.  The Accused MoCA Instrumentalities deployed by Comcast to customer premises remain the property of Comcast while deployed.

169.  The Accused MoCA Instrumentalities operate while deployed in a manner controlled and intended by Comcast.

170.  As set forth in the attached non-limiting claim chart (Exhibit F), any product or system operating in a MoCA network compliant with the charted provisions of MoCA 1.0, 1.1, and/or 2.0 necessarily infringes at least claim 2 of the '759 Patent.

171.  Each aspect of the functioning of the Accused MoCA Instrumentalities described in the claim chart operates while deployed to customer premises in a manner controlled and intended by Comcast.

172.  Comcast provides no software, support or other facility to customers to modify any aspect of the functioning described in the claim chart of the Accused MoCA Instrumentalities while deployed to customer premises.

-28-
ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

173. The Accused MoCA Instrumentalities are compliant with MoCA 1.0, 1.1, and/or 2.0, as described in the '759 Patent claim chart, Exhibit F.

174. Comcast therefore directly infringes at least claim 2 of the '759 Patent by using the Accused MoCA Instrumentalities to provide Accused Services to customers.

175. Comcast sells the Accused Services to its customers and subscribers for a fee. Pursuant to the sale of these services, Comcast uses the method recited in at least claim 2 of the '759 Patent to provide the Accused Services to Comcast's customers and subscribers through the Accused MoCA Instrumentalities. Comcast is therefore engaging in the infringing use of at least claim 2 of the '759 Patent in order to generate revenue from its customers and subscribers.

176. Comcast directly infringes at least claim 2 of the '759 Patent when it, for example, uses the Accused MoCA Instrumentalities to test, demonstrate or otherwise provide Accused Services.

177. Comcast had knowledge of the '759 Patent no later than its receipt of Entropic's communications sent to Comcast on August 9, 2022.

178. Comcast has been aware that it infringes the '759 Patent no later than its receipt of Entropic's communications sent to Comcast on August 9, 2022.

179. Comcast has known of or has been willfully blind to the '759 Patent since before the August 9, 2022 communications from Entropic.

180. The '759 Patent issued while or before Comcast was a member of MoCA.

181. Because of Comcast's knowledge of Entropic Inc.'s work and contributions related to MoCA technology, Comcast had knowledge of the '759 Patent before August 9, 2022 or was willfully blind to its existence.

182. The claims of the '759 Patent are essential to practicing at least MoCA standards versions 1.0, 1.1, and/or 2.0.

183. Comcast knew, or was willfully blind to the fact that the technology of the '759 Patent directly relates to networking over coaxial cable, including MoCA, at least as early as Comcast became aware of the existence of the '759 Patent. Because of

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

its familiarity with, and access to, the MoCA standards, Comcast knew, or was willfully blind to the fact, that use (by Comcast or its customers) of instrumentalities compliant with MoCA 1.0, 1.1, and/or 2.0 to deliver Comcast services would necessarily infringe one or more claims of the '759 Patent.

184.    Since learning of the '759 Patent and its infringing activities, Comcast has failed to cease its infringing activities.

185.    Comcast's customers and subscribers directly infringe at least claim 2 of the '759 Patent by using the Accused MoCA Instrumentalities in connection with the Accused Services provided by Comcast.

186.    Comcast actively induces its customers' and subscribers' direct infringement by providing the Accused Services and associated support.

187.    For example, Comcast actively induces infringement of at least claim 2 of the '759 Patent by providing the Accused MoCA Instrumentalities to Comcast customers with specific instructions and/or assistance (including installation and maintenance) regarding the instantiation of a MoCA network and the use of the Accused MoCA Instrumentalities to infringe the '759 Patent.

188.    Comcast aids, instructs, supports, and otherwise acts with the intent to cause an end user to make and/or use the MoCA network and/or use the Accused MoCA Instrumentalities to infringe every element of at least claim 2 of the '759 Patent.

189.    Additionally, Comcast contributes to the customers' and subscribers' direct infringement. Comcast provides at least the Accused MoCA Instrumentalities that create and are at least substantially all of a MoCA network to be used to infringe at least claim 2 of the '759 Patent.

190.    The Accused MoCA Instrumentalities have no substantial noninfringing uses. When an end user uses the Accused MoCA Instrumentalities in connection with the Accused Services provided by Comcast, the end user necessarily directly infringes at least claim 2 of the '759 Patent. The Accused MoCA Instrumentalities are therefore especially made or especially adapted for use in an infringing manner.

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

191.  Comcast's inducement of, and contribution to, the direct infringement of at least claim 2 of the '759 Patent has been, and is, continuous and ongoing through the acts described above in connection with Comcast's provision of the Accused Services.

192.  Comcast's infringement of the '759 Patent is, has been, and continues to be willful, intentional, deliberate, and/or in conscious disregard for Entropic's rights under the patent.

193.  Entropic has been damaged as a result of the infringing conduct alleged above. Comcast is liable to Entropic in an amount that compensates Entropic for Comcast's infringement, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

194.  Upon information and belief, there is no duty to mark any instrumentality with the '759 Patent in accordance with 35 U.S.C. § 287.

## COUNT IV

### (Infringement of the '802 Patent)

195.  Entropic incorporates by reference each allegation of Paragraphs 1 through 194.

196.  The '802 Patent duly issued on December 27, 2011 from an application filed December 2, 2005, and a provisional application filed December 2, 2004.

197.  Entropic owns all substantial rights, interest, and title in and to the '802 Patent, including the sole and exclusive right to prosecute this action and enforce the '802 Patent against infringers, and to collect damages for all relevant times.

198.  The '802 Patent is one of the Node Admission Patents, and is generally directed to, *inter alia,* broadband cable networks that allow devices to communicate directly over the existing coaxial cable with its current architecture without the need to modify the existing cable infrastructure. Each device communicates with the other devices in the network and establishes the best modulation and other transmission parameters that is optimized and periodically adapted to the channel between each pair of devices. '802 Patent, col. 4, lines 7–24. The '802 Patent has four claims, all of which

-31-

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

are independent. At least these claims of the '802 Patent are directed to a variety of techniques for establishing a modulation scheme for communications between nodes in the MoCA network. A true and accurate copy of the '802 Patent is attached hereto as Exhibit G.

199.   The '802 Patent is directed to patent-eligible subject matter pursuant to 35 U.S.C. § 101.

200.   The '802 Patent is valid and enforceable, and presumed as such, pursuant to 35 U.S.C. § 282.

201.   Comcast deploys one or more of the Accused MoCA Instrumentalities (e.g. XG1-A, XG1v3, XG1v4, XG2v2, and Arris DCX3200, Arris MR150CNM, Pace PR150BNM, Pace PX032ANI, Pace PXD01ANI, and/or Samsung SR150BNM and similarly operating devices) in connection with operating and providing the Accused Services.

202.   The Accused MoCA Instrumentalities deployed by Comcast to customer premises remain the property of Comcast while deployed.

203.   The Accused MoCA Instrumentalities operate while deployed in a manner controlled and intended by Comcast.

204.   As set forth in the attached non-limiting claim chart (Exhibit H), any product or system operating in a MoCA network compliant with the charted provisions of MoCA 1.0, 1.1, and/or 2.0 necessarily infringes at least claim 3 of the '802 Patent.

205.   Each aspect of the functioning of the Accused MoCA Instrumentalities described in the claim chart operates while deployed to customer premises in a manner controlled and intended by Comcast.

206.   Comcast provides no software, support or other facility to customers to modify any aspect of the functioning described in the claim chart of the Accused MoCA Instrumentalities while deployed to customer premises.

207.   The Accused MoCA Instrumentalities are compliant with MoCA 1.0, 1.1, and/or 2.0, as described in the '802 Patent claim chart, Exhibit H.

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

208.   Comcast therefore directly infringes at least claim 3 of the '802 Patent by using the Accused MoCA Instrumentalities to provide Accused Services to customers.

209.   Comcast sells the Accused Services to its customers and subscribers for a fee. Pursuant to the sale of these services, Comcast uses the method recited in at least claim 3 of the '802 Patent to provide the Accused Services to Comcast's customers and subscribers through the Accused MoCA Instrumentalities. Comcast is therefore engaging in the infringing use of at least claim 3 of the '802 Patent in order to generate revenue from its customers and subscribers.

210.   Comcast directly infringes at least claim 3 of the '802 Patent when it, for example, uses the Accused MoCA Instrumentalities to test, demonstrate or otherwise provide Accused Services and/or the Accused MoCA Instrumentalities.

211.   Comcast had knowledge of the '802 Patent no later than its receipt of Entropic's communications sent to Comcast on August 9, 2022.

212.   Comcast has been aware that it infringes the '802 Patent no later than its receipt of Entropic's communication sent to Comcast on August 9, 2022.

213.   Comcast has known of or has been willfully blind to the '802 Patent since before the August 9, 2022 communications from Entropic.

214.   The '802 Patent issued while or before Comcast was a member of MoCA.

215.   Because of Comcast's knowledge of Entropic Inc.'s work and contributions related to MoCA technology, Comcast had knowledge of the '802 Patent before August 9, 2022 or was willfully blind to its existence.

216.   The claims of the '802 Patent are essential to practicing at least MoCA standards versions 1.0, 1.1, and/or 2.0.

217.   Comcast knew, or was willfully blind to the fact that the technology of the '802 Patent directly relates to networking over coaxial cable, including MoCA, at least as early as Comcast became aware of the existence of the '802 Patent. Because of its familiarity with, and access to, the MoCA standards, Comcast knew, or was willfully blind to the fact, that use (by Comcast or its customers) of instrumentalities compliant

-33-
ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

with MoCA 1.0, 1.1, and/or 2.0 to deliver Comcast services would necessarily infringe one or more claims of the '802 Patent.

218.   Since learning of the '802 Patent and its infringing activities, Comcast has failed to cease its infringing activities.

219.   Comcast's customers and subscribers directly infringe at least claim 3 of the '802 Patent by using the Accused MoCA Instrumentalities in connection with the Accused Services provided by Comcast.

220.   Comcast actively induces its customers' and subscribers' direct infringement by providing the Accused Services and associated support.

221.   For example, Comcast actively induces infringement of at least claim 3 of the '802 Patent by providing the Accused MoCA Instrumentalities to Comcast customers with specific instructions and/or assistance (including installation and maintenance) regarding the instantiation of a MoCA network and the use of the Accused MoCA Instrumentalities to infringe the '802 Patent.

222.   Comcast aids, instructs, supports, and otherwise acts with the intent to cause an end user to make and/or use the MoCA network and/or use the Accused MoCA Instrumentalities to infringe every element of at least claim 3 of the '802 Patent.

223.   Additionally, Comcast contributes to the customers' and subscribers' direct infringement. Comcast provides at least the Accused MoCA Instrumentalities that create and are at least substantially all of a MoCA network to be used to infringe at least claim 3 of the '802 Patent.

224.   The Accused MoCA Instrumentalities have no substantial noninfringing uses. When an end user uses the Accused MoCA Instrumentalities in connection with the Accused Services provided by Comcast, the end user necessarily directly infringes at least claim 3 of the '802 Patent. The Accused MoCA Instrumentalities are therefore especially made or especially adapted for use in an infringing manner.

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

225.    Comcast's inducement of, and contribution to, the direct infringement of at least claim 3 of the '802 Patent has been, and is, continuous and ongoing through the acts described above in connection with Comcast's provision of the Accused Services.

226.    Comcast's infringement of the '802 Patent is, has been, and continues to be willful, intentional, deliberate, and/or in conscious disregard for Entropic's rights under the patent.

227.    Entropic has been damaged as a result of the infringing conduct alleged above. Comcast is liable to Entropic in an amount that compensates Entropic for Comcast's infringement, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

228.    Upon information and belief, there is no duty to mark any instrumentality with the '802 Patent in accordance with 35 U.S.C. § 287.

## COUNT V

### (Infringement of the '450 Patent)

229.    Entropic incorporates by reference each allegation of Paragraphs 1 through 228.

230.    The '450 Patent duly issued on January 14, 2014, from an application filed September 19, 2005 and, *inter alia*, a provisional application filed December 2, 2004.

231.    Entropic owns all substantial rights, interest, and title in and to the '450 Patent, including the sole and exclusive right to prosecute this action and enforce the '450 Patent against infringers, and to collect damages for all relevant times.

232.    The '450 Patent is one of the Link Maintenance Patents, and is generally directed to, *inter alia*, broadband cable networks that allow devices to communicate directly over the existing coaxial cable with its current architecture without the need to modify the existing cable infrastructure. Each device communicates with the other devices in the network and establishes a common modulation scheme between the devices in the network. '450 Patent, col. 4, lines 12-28. The '450 Patent has 38 claims, of which, claim 1, 8, 27, 29, and 34 are independent. At least these claims of the '450

Patent are directed to a variety of techniques for determining a common modulation scheme for communications between nodes in the MoCA network. A true and accurate copy of the '450 Patent is attached hereto as Exhibit I.

233. The '450 Patent is directed to patent-eligible subject matter pursuant to 35 U.S.C. § 101.

234. The '450 Patent is valid and enforceable, and presumed as such, pursuant to 35 U.S.C. § 282.

235. Comcast deploys one or more of the Accused MoCA Instrumentalities (e.g. XG1-A, XG1v3, XG1v4, XG2v2, and Arris DCX3200, Arris MR150CNM, Pace PR150BNM, Pace PX032ANI, Pace PXD01ANI, and/or Samsung SR150BNM and similarly operating devices) in connection with operating and providing the Accused Services.

236. The Accused MoCA Instrumentalities deployed by Comcast to customer premises remain the property of Comcast while deployed.

237. The Accused MoCA Instrumentalities operate while deployed in a manner controlled and intended by Comcast.

238. As set forth in the attached non-limiting claim chart (Exhibit J), any product or system operating in a MoCA network compliant with the charted provisions of MoCA 1.0, 1.1, and/or 2.0 necessarily infringes at least claim 29 of the '450 Patent.

239. Each aspect of the functioning of the Accused MoCA Instrumentalities described in the claim chart operates while deployed to customer premises in a manner controlled and intended by Comcast.

240. Comcast provides no software, support or other facility to customers to modify any aspect of the functioning described in the claim chart of the Accused MoCA Instrumentalities while deployed to customer premises.

241. The Accused MoCA Instrumentalities are compliant with MoCA 1.0, 1.1, and/or 2.0, as described in the '450 Patent claim chart, Exhibit J.

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

242.    Comcast therefore directly infringes at least claim 29 of the '450 Patent by using the Accused MoCA Instrumentalities to provide Accused Services to customers.

243.    Comcast sells the Accused Services to its customers and subscribers for a fee. Pursuant to the sale of these services, Comcast uses the method recited in at least claim 29 of the '450 Patent to provide the Accused Services to Comcast's customers and subscribers through the Accused MoCA Instrumentalities. Comcast is therefore engaging in the infringing use of at least claim 29 of the '450 Patent in order to generate revenue from its customers and subscribers.

244.    Comcast directly infringes at least claim 29 of the '450 Patent when it, for example, uses the Accused MoCA Instrumentalities to test, demonstrate or otherwise provide Accused Services.

245.    Comcast had knowledge of the '450 Patent no later than its receipt of Entropic's communications sent to Comcast on August 9, 2022.

246.    Comcast has been aware that it infringes the '450 Patent no later than its receipt of Entropic's communication sent to Comcast on August 9, 2022.

247.    Comcast has known of or has been willfully blind to the '450 Patent since before the August 9, 2022 communications from Entropic.

248.    The '450 Patent issued while or before Comcast was a member of MoCA.

249.    Because of Comcast's knowledge of Entropic Inc.'s work and contributions related to MoCA technology, Comcast had knowledge of the '450 Patent before August 9, 2022 or was willfully blind to its existence.

250.    The claims of the '450 Patent are essential to practicing at least MoCA standards versions 1.0, 1.1, and/or 2.0.

251.    Comcast knew, or was willfully blind to the fact that the technology of the '450 Patent directly relates to networking over coaxial cable, including MoCA, at least as early as Comcast became aware of the existence of the '450 Patent. Because of its familiarity with, and access to, the MoCA standards, Comcast knew, or was willfully blind to the fact, that use (by Comcast or its customers) of instrumentalities compliant

with MoCA 1.0, 1.1, and/or 2.0 to deliver Comcast services would necessarily infringe one or more claims of the '450 Patent.

252.   Since learning of the '450 Patent and its infringing activities, Comcast has failed to cease its infringing activities.

253.   Comcast's customers and subscribers directly infringe at least claim 29 of the '450 Patent by using the Accused MoCA Instrumentalities in connection with the Accused Services provided by Comcast.

254.   Comcast actively induces its customers' and subscribers' direct infringement by providing the Accused Services and associated support.

255.   For example, Comcast actively induces infringement of at least claim 29 of the '450 Patent by providing the Accused MoCA Instrumentalities to Comcast customers with specific instructions and/or assistance (including installation and maintenance) regarding the instantiation of a MoCA network and the use of the Accused MoCA Instrumentalities to infringe the '450 Patent.

256.   Comcast aids, instructs, supports, and otherwise acts with the intent to cause an end user to make and/or use the MoCA network and/or use the Accused MoCA Instrumentalities to infringe every element of at least claim 29 of the '450 Patent.

257.   Additionally, Comcast contributes to the customers' and subscribers' direct infringement. Comcast provides at least the Accused MoCA Instrumentalities that create and are at least substantially all of a MoCA network to be used to infringe at least claim 29 of the '450 Patent.

258.   The Accused MoCA Instrumentalities have no substantial noninfringing uses. When an end user uses the Accused MoCA Instrumentalities in connection with the Accused Services provided by Comcast, the end user directly infringes at least claim 29 of the '450 Patent. The Accused MoCA Instrumentalities are especially made or especially adapted for use in an infringing manner.

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

259.   Comcast's inducement of, and contribution to, the direct infringement of at least claim 29 of the '450 Patent has been, and is, continuous and ongoing through the acts described above in connection with Comcast's provision of the Accused Services.

260.   Comcast's infringement of the '450 Patent is, has been, and continues to be willful, intentional, deliberate, and/or in conscious disregard for Entropic's rights under the patent.

261.   Entropic has been damaged as a result of the infringing conduct alleged above. Comcast is liable to Entropic in an amount that compensates Entropic for Comcast's infringement, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

262.   Upon information and belief, there is no duty to mark any instrumentality with the '450 Patent in accordance with 35 U.S.C. § 287.

### COUNT VI

### (Infringement of the '7,566 Patent)

263.   Entropic incorporates by reference each allegation of Paragraphs 1 through 262.

264.   The '7,566 Patent duly issued on April 9, 2019 from an application filed February 7, 2017, an application filed September 19, 2005, and *inter alia*, a provisional application filed December 2, 2004.

265.   Entropic owns all substantial rights, interest, and title in and to the '7,566 Patent, including the sole and exclusive right to prosecute this action and enforce the '7,566 Patent against infringers, and to collect damages for all relevant times.

266.   The '7,566 Patent is the Network Coordinator Patent, and is generally directed to, *inter alia,* broadband cable networks that allow devices to communicate directly over the existing coaxial cable with its current architecture without the need to modify the existing cable infrastructure. Each device communicates with the other devices in the network and establishes the best modulation and other transmission parameters that is optimized and periodically adapted to the channel between each pair

-39-

of devices. '7,566 Patent, col. 4, lines 23–39. The '7,566 Patent has 20 claims, of which claims 1, 11, and 19 are independent. At least these claims of the '7,566 Patent are directed to a variety of techniques for controlling the admission of nodes in the MoCA network. A true and accurate copy of the '7,566 Patent is attached hereto as Exhibit K.

267.   The '7,566 Patent is directed to patent-eligible subject matter pursuant to 35 U.S.C. § 101.

268.   The '7,566 Patent is valid and enforceable, and presumed as such, pursuant to 35 U.S.C. § 282.

269.   Comcast deploys one or more of the Accused MoCA Instrumentalities (e.g. XG1-A, XG1v3, XG1v4, XG2v2, and Arris DCX3200, Arris MR150CNM, Pace PR150BNM, Pace PX032ANI, Pace PXD01ANI, and/or Samsung SR150BNM and similarly operating devices) in connection with operating and providing the Accused Services.

270.   The Accused MoCA Instrumentalities deployed by Comcast to customer premises remain the property of Comcast while deployed.

271.   The Accused MoCA Instrumentalities operate while deployed in a manner controlled and intended by Comcast.

272.   As set forth in the attached non-limiting claim chart (Exhibit L), any product or system operating in a MoCA network compliant with the charted provisions of MoCA 1.0, 1.1, and/or 2.0 necessarily infringes at least claim 11 of the '7,566 Patent.

273.   Each aspect of the functioning of the Accused MoCA Instrumentalities described in the claim chart operates while deployed to customer premises in a manner controlled and intended by Comcast.

274.   Comcast provides no software, support or other facility to customers to modify any aspect of the functioning described in the claim chart of the Accused MoCA Instrumentalities while deployed to customer premises.

275.   The Accused MoCA Instrumentalities are compliant with MoCA 1.0, 1.1, and/or 2.0, as described in the '7,566 Patent claim chart, Exhibit L.

276.   Comcast therefore directly infringes at least claim 11 of the '7,566 Patent by using the Accused MoCA Instrumentalities to provide Accused Services to customers.

277.   Comcast directly infringes at least claim 11 of the '7,566 Patent when it, for example, uses the Accused MoCA Instrumentalities to test, demonstrate or otherwise provide Accused Services and/or the Accused MoCA Instrumentalities.

278.   Comcast directly infringes at least claim 11 of the '7,566 Patent by making, importing, selling, and/or offering for sale the Accused MoCA Instrumentalities, which meet every limitation of at least claim 11 of the '7,566 Patent, in connection with providing the Accused Services over an on-premises coaxial cable network.

279.   Comcast had knowledge of the '7,566 Patent no later than its receipt of Entropic's communications sent to Comcast on August 9, 2022.

280.   Comcast has been aware that it infringes the '7,566 Patent no later than its receipt of Entropic's communication sent to Comcast on August 9, 2022.

281.   Comcast has known of or has been willfully blind to the '7,566 Patent since before the August 9, 2022 communications from Entropic.

282.   The '7,566 Patent issued while or before Comcast was a member of MoCA.

283.   Because of Comcast's knowledge of Entropic Inc.'s work and contributions related to MoCA technology, Comcast had knowledge of the '7,566 Patent before August 9, 2022 or was willfully blind to its existence.

284.   The claims of the '7,566 Patent are essential to practicing at least MoCA standards versions 1.0, 1.1, and/or 2.0.

285.   Comcast knew, or was willfully blind to the fact that the technology of the '7,566 Patent directly relates to networking over coaxial cable, including MoCA, at least as early as Comcast became aware of the existence of the '7,566 Patent. Because of its familiarity with, and access to, the MoCA standards, Comcast knew, or was willfully blind to the fact, that use (by Comcast or its customers) of instrumentalities

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

compliant with MoCA 1.0, 1.1, and/or 2.0 to deliver Comcast services would necessarily infringe one or more claims of the '7,566 Patent.

286.   Since learning of the '7,566 Patent and its infringing activities, Comcast has failed to cease its infringing activities.

287.   Comcast's customers and subscribers directly infringe at least claim 11 of the '7,566 Patent by using the Accused MoCA Instrumentalities in connection with the Accused Services provided by Comcast.

288.   Comcast actively induces its customers' and subscribers' direct infringement by providing the Accused Services through the Accused MoCA Instrumentalities, and associated support.

289.   For example, Comcast actively induces infringement of at least claim 11 of the '7,566 Patent by providing the Accused MoCA Instrumentalities to Comcast customers with specific instructions and/or assistance (including installation and maintenance) regarding the instantiation of a MoCA network and the use of the Accused MoCA Instrumentalities to infringe the '7,566 Patent.

290.   Comcast aids, instructs, supports, and otherwise acts with the intent to cause an end user to make and/or use the MoCA network and/or use the Accused MoCA Instrumentalities to infringe every element of at least claim 11 of the '7,566 Patent.

291.   Additionally, Comcast contributes to the customers' and subscribers' direct infringement. Comcast provides, *inter alia*, the Accused MoCA Instrumentalities designed and configured to create a MoCA network and operate as nodes in the network, the use of which infringes at least claim 11 of the '7,566 Patent.

292.   The Accused MoCA Instrumentalities have no substantial noninfringing uses. When an end user uses the Accused MoCA Instrumentalities in connection with the Accused Services provided by Comcast, the end user directly infringes at least claim 11 of the '7,566 Patent. The Accused MoCA Instrumentalities are therefore especially made or especially adapted for use in an infringing manner.

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

293.   Comcast's inducement of, and contribution to, the direct infringement of at least claim 11 of the '7,566 Patent has been, and is, continuous and ongoing through the acts described above in connection with Comcast's provision of the Accused Services.

294.   Comcast's infringement of the '7,566 Patent is, has been, and continues to be willful, intentional, deliberate, and/or in conscious disregard for Entropic's rights under the patent.

295.   Entropic has been damaged as a result of the infringing conduct alleged above. Comcast is liable to Entropic in an amount that compensates Entropic for Comcast's infringement, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

296.   Entropic is aware of no obligation to mark any instrumentality with the '7,566 Patent in accordance with 35 U.S.C. § 287.

## COUNT VII

### (Infringement of the '539 Patent)

297.   Entropic incorporates by reference each allegation of Paragraphs 1 through 296.

298.   The '539 Patent duly issued on December 31, 2013 from an application filed September 29, 2005 and, *inter alia*, a provisional application filed December 2, 2004.

299.   Entropic owns all substantial rights, interest, and title in and to the '539 Patent, including the sole and exclusive right to prosecute this action and enforce the '539 Patent against infringers, and to collect damages for all relevant times.

300.   The '539 Patent is one of the Link Maintenance Patents, and is generally directed to, *inter alia,* a physical layer transmitter that performs all of the necessary RF, analog and digital processing required for transmitting MAC messages between devices in a broadband cable network. '539 Patent, col. 4, lines 37–48. The '539 Patent has seven claims, of which claim 1 is independent. At least this claim of the '539 Patent is directed at a variety of techniques for monitoring and maintaining utilized modulation profiles in

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

the MoCA network. A true and accurate copy of the '539 Patent is attached hereto as Exhibit M.

301.    The '539 Patent is directed to patent-eligible subject matter pursuant to 35 U.S.C. § 101.

302.    The '539 Patent is valid and enforceable, and presumed as such, pursuant to 35 U.S.C. § 282.

303.    Comcast deploys one or more of the Accused MoCA Instrumentalities (e.g. XG1-A, XG1v3, XG1v4, XG2v2, and Arris DCX3200, Arris MR150CNM, Pace PR150BNM, Pace PX032ANI, Pace PXD01ANI, and/or Samsung SR150BNM and similarly operating devices) in connection with operating and providing the Accused Services.

304.    The Accused MoCA Instrumentalities deployed by Comcast to customer premises remain the property of Comcast while deployed.

305.    The Accused MoCA Instrumentalities operate while deployed in a manner controlled and intended by Comcast.

306.    As set forth in the attached non-limiting claim chart (Exhibit N), any product or system operating in a MoCA network compliant with the charted provisions of MoCA 1.0, 1.1, and/or 2.0 necessarily infringes at least claim 1 of the '539 Patent.

307.    Each aspect of the functioning of the Accused MoCA Instrumentalities described in the claim chart operates while deployed to customer premises in a manner controlled and intended by Comcast.

308.    Comcast provides no software, support or other facility to customers to modify any aspect of the functioning described in the claim chart of the Accused MoCA Instrumentalities while deployed to customer premises.

309.    The Accused MoCA Instrumentalities are compliant with MoCA 1.0, 1.1, and/or 2.0, as described in the '539 Patent claim chart, Exhibit N.

310.    Comcast therefore directly infringes at least claim 1 of the '539 Patent by using the Accused MoCA Instrumentalities to provide Accused Services to customers.

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

311.   Comcast directly infringes at least claim 1 of the '539 Patent when it, for example, uses the Accused MoCA Instrumentalities to test, demonstrate or otherwise provide Accused Services.

312.   Comcast directly infringes at least claim 1 of the '539 Patent by making, importing, selling, and/or offering for sale the Accused MoCA Instrumentalities, which meet every limitation of at least claim 1 of the '539 Patent, in connection with providing the Accused Services over an on-premises coaxial cable network.

313.   Comcast had knowledge of the '539 Patent no later than its receipt of Entropic's communications sent to Comcast on August 9, 2022.

314.   Comcast has been aware that it infringes the '539 Patent no later than its receipt of Entropic's communication sent to Comcast on August 9, 2022.

315.   Comcast has known of or has been willfully blind to the '539 Patent since before the August 9, 2022 communications from Entropic.

316.   The '539 Patent issued while or before Comcast was a member of MoCA.

317.   Because of Comcast's knowledge of Entropic Inc.'s work and contributions related to MoCA technology, Comcast had knowledge of the '539 Patent before August 9, 2022 or was willfully blind to its existence.

318.   The claims of the '539 Patent are essential to practicing at least MoCA standards versions 1.0, 1.1, and/or 2.0.

319.   Comcast knew, or was willfully blind to the fact that the technology of the '539 Patent directly relates to networking over coaxial cable, including MoCA, at least as early as Comcast became aware of the existence of the '539 Patent. Because of its familiarity with, and access to, the MoCA standards, Comcast knew, or was willfully blind to the fact, that use (by Comcast or its customers) of instrumentalities compliant with MoCA 1.0, 1.1, and/or 2.0 to deliver Comcast services would necessarily infringe one or more claims of the '539 Patent.

320.   Since learning of the '539 Patent and its infringing activities, Comcast has failed to cease its infringing activities.

-45-

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

321.   Comcast's customers and subscribers directly infringe at least claim 1 of the '539 Patent by using the Accused MoCA Instrumentalities in connection with the Accused Services provided by Comcast.

322.   Comcast actively induces its customers' and subscribers' direct infringement by providing the Accused Services through the Accused MoCA Instrumentalities, and associated support.

323.   For example, Comcast actively induces infringement of at least claim 1 of the '539 Patent by providing the Accused MoCA Instrumentalities to Comcast customers with specific instructions and/or assistance (including installation and maintenance) regarding the instantiation of a MoCA network and the use of the Accused MoCA Instrumentalities to infringe the '539 Patent.

324.   Comcast aids, instructs, supports, and otherwise acts with the intent to cause an end user to make and/or use the MoCA network and/or use the Accused MoCA Instrumentalities to infringe every element of at least claim 1 of the '539 Patent.

325.   Additionally, Comcast contributes to the customers' and subscribers' direct infringement. Comcast provides, *inter alia*, the Accused MoCA Instrumentalities designed and configured to create a MoCA network and operate as nodes in the network, the use of which infringes at least claim 1 of the '539 Patent.

326.   The Accused MoCA Instrumentalities have no substantial noninfringing uses. When an end user uses the Accused MoCA Instrumentalities in connection with the Accused Services provided by Comcast, the end user directly infringes at least claim 1 of the '539 Patent. The Accused MoCA Instrumentalities are therefore especially made or especially adapted for use in an infringing manner.

327.   Comcast's inducement of, and contribution to, the direct infringement of at least claim 1 of the '539 Patent has been, and is, continuous and ongoing through the acts described above in connection with Comcast's provision of the Accused Services.

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

328.    Comcast's infringement of the '539 Patent is, has been, and continues to be willful, intentional, deliberate, and/or in conscious disregard for Entropic's rights under the patent.

329.    Entropic has been damaged as a result of the infringing conduct alleged above. Comcast is liable to Entropic in an amount that compensates Entropic for Comcast's infringement, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

330.    Entropic is aware of no obligation to mark any instrumentality with the '539 Patent in accordance with 35 U.S.C. § 287.

## COUNT VIII

### (Infringement of the '213 Patent)

331.    Entropic incorporates by reference each allegation of Paragraphs 1 through 330.

332.    The '213 Patent duly issued on December 5, 2017 from an application filed February 6, 2008, and, *inter alia*, a provisional application filed on February 6 2007.

333.    Entropic owns all substantial rights, interest, and title in and to the '213 Patent, including the sole and exclusive right to prosecute this action and enforce the '213 Patent against infringers, and to collect damages for all relevant times.

334.    The '213 Patent is one of the PQoS Flows Patents, and is generally directed to, *inter alia*, low-cost and high-speed management of resources within a network in order to secure the capability to distribute multimedia data (such as video/audio, games, images, generic data, and interactive services) between devices within existing on-premises coaxial cable networks. '213 Patent, col. 3, lines 46–53. The '213 Patent has 24 claims, of which claims 1, 13, and 23 are independent. At least these claims of the '213 Patent are directed to a variety of techniques for allocating resources for guaranteed quality of service flows in the MoCA network. A true and accurate copy of the '213 Patent is attached hereto as Exhibit O.

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

335.   The '213 Patent is directed to patent-eligible subject matter pursuant to 35 U.S.C. § 101.

336.   The '213 Patent is valid and enforceable, and presumed as such, pursuant to 35 U.S.C. § 282.

337.   Comcast deploys one or more of the Accused MoCA Instrumentalities (e.g. XG1-A, XG1v3, XG1v4, XG2v2, and Arris DCX3200, Arris MR150CNM, Pace PR150BNM, Pace PX032ANI, Pace PXD01ANI, and/or Samsung SR150BNM and similarly operating devices) in connection with operating and providing the Accused Services.

338.   The Accused MoCA Instrumentalities deployed by Comcast to customer premises remain the property of Comcast while deployed.

339.   The Accused MoCA Instrumentalities operate while deployed in a manner controlled and intended by Comcast.

340.   As set forth in the attached non-limiting claim chart (Exhibit P), any product or system operating in a MoCA network compliant with the charted provisions of MoCA 1.1, or 2.0 necessarily infringes at least claim 1 of the '213 Patent.

341.   Each aspect of the functioning of the Accused MoCA Instrumentalities described in the claim chart operates while deployed to customer premises in a manner controlled and intended by Comcast.

342.   Comcast provides no software, support or other facility to customers to modify any aspect of the functioning described in the claim chart of the Accused MoCA Instrumentalities while deployed to customer premises.

343.   The Accused MoCA Instrumentalities are compliant with MoCA 1.1 and/or MoCA 2.0, as described in the '213 Patent claim chart, Exhibit P.

344.   Comcast therefore directly infringes at least claim 1 of the '213 Patent by using the Accused MoCA Instrumentalities to provide Accused Services to customers.

345.   Comcast sells the Accused Services to its customers and subscribers for a fee. Pursuant to the sale of these services, Comcast uses the method recited in at least

claim 1 of the '213 Patent to provide the Accused Services to Comcast's customers and subscribers through the Accused MoCA Instrumentalities. Comcast is therefore engaging in the infringing use of at least claim 1 of the '213 Patent in order to generate revenue from its customers and subscribers.

346. Comcast directly infringes at least claim 1 of the '213 Patent when it, for example, uses the Accused MoCA Instrumentalities to test, demonstrate or otherwise provide Accused Services.

347. Comcast had knowledge of the '213 Patent no later than its receipt of Entropic's communications sent to Comcast on August 9, 2022.

348. Comcast has been aware that it infringes the '213 Patent no later than its receipt of Entropic's communications sent to Comcast on August 9, 2022.

349. Comcast has known of or has been willfully blind to the '213 Patent since before the August 9, 2022 communications from Entropic.

350. The '213 Patent issued while or before Comcast was a member of MoCA.

351. Because of Comcast's knowledge of Entropic Inc.'s work and contributions related to MoCA technology, Comcast had knowledge of the '213 Patent before August 9, 2022 or was willfully blind to its existence.

352. The claims of the '213 Patent are essential to practicing at least MoCA standards versions 1.1, and/or 2.0.

353. Comcast knew, or was willfully blind to the fact that the technology of the '213 Patent directly relates to networking over coaxial cable, including MoCA, at least as early as Comcast became aware of the existence of the '213 Patent. Because of its familiarity with, and access to, the MoCA standards, Comcast knew, or was willfully blind to the fact, that use (by Comcast or its customers) of instrumentalities compliant with MoCA 1.1, and/or 2.0 to deliver Comcast services would necessarily infringe one or more claims of the '213 Patent.

354. Since learning of the '213 Patent and its infringing activities, Comcast has failed to cease its infringing activities.

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

355.    Comcast's customers and subscribers directly infringe at least claim 1 of the '213 Patent by using the Accused MoCA Instrumentalities in connection with the Accused Services provided by Comcast.

356.    Comcast actively induces its customers' and subscribers' direct infringement by providing the Accused Services and associated support.

357.    For example, Comcast actively induces infringement of at least claim 1 of the '213 Patent by providing the Accused MoCA Instrumentalities to Comcast customers with specific instructions and/or assistance (including installation and maintenance) regarding the instantiation of a MoCA network and the use of the Accused MoCA Instrumentalities to infringe the '213 Patent.

358.    Comcast aids, instructs, supports, and otherwise acts with the intent to cause an end user to make and/or use the MoCA network and/or use the Accused MoCA Instrumentalities to infringe every element of at least claim 1 of the '213 Patent.

359.    Additionally, Comcast contributes to the customers' and subscribers' direct infringement. Comcast provides at least the Accused MoCA Instrumentalities that create and are at least substantially all of a MoCA network to be used to infringe at least claim 1 of the '213 Patent.

360.    The Accused MoCA Instrumentalities have no substantial noninfringing uses. When an end user uses the Accused MoCA Instrumentalities in connection with the Accused Services provided by Comcast, the end user directly infringes at least claim 1 of the '213 Patent. The Accused MoCA Instrumentalities are therefore especially made or especially adapted for use in an infringing manner.

361.    Comcast's inducement of, and contribution to, the direct infringement of at least claim 1 of the '213 Patent has been, and is, continuous and ongoing through the acts described above in connection with Comcast's provision of the Accused Services.

362.    Comcast's infringement of the '213 Patent is, has been, and continues to be willful, intentional, deliberate, and/or in conscious disregard for Entropic's rights under the patent.

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

363.    Entropic has been damaged as a result of the infringing conduct alleged above. Comcast is liable to Entropic in an amount that compensates Entropic for Comcast's infringement, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

364.    Upon information and belief, there is no duty to mark any instrumentality with the '213 Patent in accordance with 35 U.S.C. § 287(a).

## COUNT IX

### (Infringement of the '422 Patent)

365.    Entropic incorporates by reference each allegation of Paragraphs 1 through 364.

366.    The '422 Patent duly issued on October 1, 2019 from an application filed December 5, 2017, an application filed February 6, 2008, and, *inter alia*, a provisional application filed February 6, 2007.

367.    Entropic owns all substantial rights, interest, and title in and to the '422 Patent, including the sole and exclusive right to prosecute this action and enforce the '422 Patent against infringers, and to collect damages for all relevant times.

368.    The '422 Patent is one of the PQoS Flows Patents, and is generally directed to, *inter alia*, low-cost and high-speed management of resources within a network in order to secure the capability to distribute multimedia data (such as video/audio, games, images, generic data, and interactive services) between devices within existing on-premises coaxial cable networks. '422 Patent, col. 3, lines 53–60. The '422 Patent has 20 claims, of which, claims 1, 5, 12–17 are independent. At least these claims of the '422 Patent are directed to a variety of techniques for allocating resources for guaranteed quality of service flows in the MoCA network. A true and accurate copy of the '422 Patent is attached hereto as Exhibit Q.

369.    The '422 Patent is directed to patent-eligible subject matter pursuant to 35 U.S.C. § 101.

-51-
ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

370.   The '422 Patent is valid and enforceable, and presumed as such, pursuant to 35 U.S.C. § 282.

371.   Comcast deploys one or more of the Accused MoCA Instrumentalities (e.g. XG1-A, XG1v3, XG1v4, XG2v2, and Arris DCX3200, Arris MR150CNM, Pace PR150BNM, Pace PX032ANI, Pace PXD01ANI, and/or Samsung SR150BNM and similarly operating devices) in connection with operating and providing the Accused Services.

372.   The Accused MoCA Instrumentalities deployed by Comcast to customer premises remain the property of Comcast while deployed.

373.   The Accused MoCA Instrumentalities operate while deployed in a manner controlled and intended by Comcast.

374.   As set forth in the attached non-limiting claim chart (Exhibit R), any product or system operating in a MoCA network compliant with the charted provisions of MoCA 1.1, or 2.0 necessarily infringes at least claim 1 of the '422 Patent.

375.   Each aspect of the functioning of the Accused MoCA Instrumentalities described in the claim chart operates while deployed to customer premises in a manner controlled and intended by Comcast.

376.   Comcast provides no software, support or other facility to customers to modify any aspect of the functioning described in the claim chart of the Accused MoCA Instrumentalities while deployed to customer premises.

377.   The Accused MoCA Instrumentalities are compliant with MoCA 1.1 and/or MoCA 2.0, as described in the '422 Patent claim chart, Exhibit R.

378.   Comcast therefore directly infringes at least claim 1 of the '422 Patent by using the Accused MoCA Instrumentalities to provide Accused Services to customers.

379.   Comcast directly infringes at least claim 1 of the '422 Patent when it, for example, uses the Accused MoCA Instrumentalities to test, demonstrate or otherwise provide Accused Services.

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

380.   Comcast directly infringes at least claim 1 of the '422 Patent by making, importing, selling, and/or offering for sale the Accused MoCA Instrumentalities in connection with providing the Accused Services over an on-premises coaxial cable network, which meets every limitation of at least claim 1 of the '422 Patent.

381.   Comcast had knowledge of the '422 Patent no later than its receipt of Entropic's communications sent to Comcast on August 9, 2022.

382.   Comcast has been aware that it infringes the '422 Patent no later than its receipt of Entropic's communication sent to Comcast on August 9, 2022.

383.   Comcast has known of or has been willfully blind to the '422 Patent since before the August 9, 2022 communications from Entropic.

384.   The '422 Patent issued while or before Comcast was a member of MoCA.

385.   Because of Comcast's knowledge of Entropic Inc.'s work and contributions related to MoCA technology, Comcast had knowledge of the '422 Patent before August 9, 2022 or was willfully blind to its existence.

386.   The claims of the '422 Patent are essential to practicing at least MoCA standards versions 1.1, and/or 2.0.

387.   Comcast knew, or was willfully blind to the fact that the technology of the '422 Patent directly relates to networking over coaxial cable, including MoCA, at least as early as Comcast became aware of the existence of the '422 Patent. Because of its familiarity with, and access to, the MoCA standards, Comcast knew, or was willfully blind to the fact, that use (by Comcast or its customers) of instrumentalities compliant with MoCA 1.1, and/or 2.0 to deliver Comcast services would necessarily infringe one or more claims of the '422 Patent.

388.   Since learning of the '422 Patent and its infringing activities, Comcast has failed to cease its infringing activities.

389.   Comcast's customers and subscribers directly infringe at least claim 1 of the '422 Patent by using the Accused MoCA Instrumentalities in connection with the Accused Services provided by Comcast.

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

390.   Comcast actively induces its customers' and subscribers' direct infringement by providing the Accused Services and associated support.

391.   For example, Comcast actively induces infringement of at least claim 1 of the '422 Patent by providing the Accused MoCA Instrumentalities to Comcast customers with specific instructions and/or assistance (including installation and maintenance) regarding the instantiation of a MoCA network and the use of the Accused MoCA Instrumentalities to infringe the '422 Patent.

392.   Comcast aids, instructs, supports, and otherwise acts with the intent to cause an end user to make and/or use the MoCA network and/or use the Accused MoCA Instrumentalities to infringe every element of at least claim 1 of the '422 Patent.

393.   Additionally, Comcast contributes to the customers' and subscribers' direct infringement. Comcast provides at least the Accused MoCA Instrumentalities that create and are at least substantially all of a MoCA network to be used to infringe at least claim 1 of the '422 Patent.

394.   The Accused MoCA Instrumentalities have no substantial noninfringing uses. When an end user uses the Accused MoCA Instrumentalities in connection with the Accused Services provided by Comcast, the end user directly infringes at least claim 1 of the '422 Patent. The Accused MoCA Instrumentalities are therefore especially made or especially adapted for use in an infringing manner.

395.   Comcast's inducement of, and contribution to, the direct infringement of at least claim 1 of the '422 Patent has been, and is, continuous and ongoing through the acts described above in connection with Comcast's provision of the Accused Services.

396.   Comcast's infringement of the '422 Patent is, has been, and continues to be willful, intentional, deliberate, and/or in conscious disregard for Entropic's rights under the patent.

397.   Entropic has been damaged as a result of the infringing conduct alleged above. Comcast is liable to Entropic in an amount that compensates Entropic for

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

Comcast's infringement, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

398.   Upon information and belief, there is no duty to mark any instrumentality with the '422 Patent in accordance with 35 U.S.C. § 287.

## COUNT X

### (Infringement of the '910 Patent)

399.   Entropic incorporates by reference each allegation of Paragraphs 1 through 398.

400.   The '910 Patent duly issued on July 24, 2012 from an application filed May 9, 2008, and a provisional application filed May 9, 2007.

401.   Entropic owns all substantial rights, interest, and title in and to the '910 Patent, including the sole and exclusive right to prosecute this action and enforce the '910 Patent against infringers, and to collect damages for all relevant times.

402.   The '910 Patent is the Packet Aggregation Patent, and is generally directed to, *inter alia,* transmitting data over a network, where the transmitting device aggregates packets that are directed to a common destination node. This reduces the transmitted packet overhead of the network by eliminating interframe gaps, preamble information, and extra headers. '910 Patent, col. 1, line 66 – col. 2, line 3. The '910 Patent has three claims, all of which are independent. At least these claims of the '910 Patent are directed to a variety of techniques for aggregating packet data units in the MoCA network. A true and accurate copy of the '910 Patent is attached hereto as Exhibit S.

403.   The '910 Patent is directed to patent-eligible subject matter pursuant to 35 U.S.C. § 101.

404.   The '910 Patent is valid and enforceable, and presumed as such, pursuant to 35 U.S.C. § 282.

405.   Comcast deploys one or more of the Accused MoCA Instrumentalities (e.g. XG1-A, XG1v3, XG1v4, XG2v2, and Arris DCX3200, Arris MR150CNM, Pace PR150BNM, Pace PX032ANI, Pace PXD01ANI, and/or Samsung SR150BNM and

-55-

similarly operating devices) in connection with operating and providing the Accused Services.

406.    The Accused MoCA Instrumentalities deployed by Comcast to customer premises remain the property of Comcast while deployed.

407.    The Accused MoCA Instrumentalities operate while deployed in a manner controlled and intended by Comcast.

408.    As set forth in the attached non-limiting claim chart (Exhibit T), any product or system operating in a MoCA network compliant with the charted provisions of MoCA 1.1, or 2.0 necessarily infringes at least claim 3 of the '910 Patent.

409.    Each aspect of the functioning of the Accused MoCA Instrumentalities described in the claim chart operates while deployed to customer premises in a manner controlled and intended by Comcast.

410.    Comcast provides no software, support or other facility to customers to modify any aspect of the functioning described in the claim chart of the Accused MoCA Instrumentalities while deployed to customer premises.

411.    The Accused MoCA Instrumentalities are compliant with MoCA 1.1., and/or MoCA 2.0, as described in the '910 Patent claim chart, Exhibit T.

412.    Comcast therefore directly infringes at least claim 3 of the '910 Patent by using the Accused MoCA Instrumentalities to provide Accused Services to customers.

413.    Comcast directly infringes at least claim 3 of the '910 Patent when it, for example, uses the Accused MoCA Instrumentalities to test, demonstrate or otherwise provide Accused Services.

414.    Comcast directly infringes at least claim 3 of the '910 Patent by making, importing, selling, and/or offering for sale the Accused MoCA Instrumentalities, which meet every limitation of at least claim 3 of the '910 Patent, in connection with providing the Accused Services over an on-premises coaxial cable network.

415.    Comcast had knowledge of the '910 Patent no later than its receipt of Entropic's communications sent to Comcast on August 9, 2022.

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

416.   Comcast has been aware that it infringes the '910 Patent no later than its receipt of Entropic's communication sent to Comcast on August 9, 2022.

417.   Comcast has known of or has been willfully blind to the '910 Patent since before the August 9, 2022 communications from Entropic.

418.   The '910 Patent issued while or before Comcast was a member of MoCA.

419.   Because of Comcast's knowledge of Entropic Inc.'s work and contributions related to MoCA technology, Comcast had knowledge of the '910 Patent before August 9, 2022 or was willfully blind to its existence.

420.   The claims of the '910 Patent are essential to practicing at least MoCA standards versions 1.1, and/or 2.0.

421.   Comcast knew, or was willfully blind to the fact that the technology of the '910 Patent directly relates to networking over coaxial cable, including MoCA, at least as early as Comcast became aware of the existence of the '910 Patent. Because of its familiarity with, and access to, the MoCA standards, Comcast knew, or was willfully blind to the fact, that use (by Comcast or its customers) of instrumentalities compliant with MoCA 1.1, and/or 2.0 to deliver Comcast services would necessarily infringe one or more claims of the '910 Patent.

422.   Since learning of the '910 Patent and its infringing activities, Comcast has failed to cease its infringing activities.

423.   Comcast's customers and subscribers directly infringe at least claim 3 of the '910 Patent by using the Accused MoCA Instrumentalities in connection with the Accused Services provided by Comcast.

424.   Comcast actively induces its customers' and subscribers' direct infringement by providing the Accused Services through the Accused MoCA Instrumentalities, and associated support.

425.   For example, Comcast actively induces infringement of at least claim 3 of the '910 Patent by providing the Accused MoCA Instrumentalities to Comcast customers with specific instructions and/or assistance (including installation and

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

maintenance) regarding the instantiation of a MoCA network and the use of the Accused MoCA Instrumentalities to infringe the '910 Patent.

426.  Comcast aids, instructs, supports, and otherwise acts with the intent to cause an end user to make and/or use the MoCA network and/or use the Accused MoCA Instrumentalities to infringe every element of at least claim 3 of the '910 Patent.

427.  Additionally, Comcast contributes to the customers' and subscribers' direct infringement. Comcast provides, *inter alia*, the Accused MoCA Instrumentalities designed and configured to create a MoCA network and operate as nodes in the network, the use of which infringes at least claim 3 of the '910 Patent.

428.  The Accused MoCA Instrumentalities have no substantial noninfringing uses. When an end user uses the Accused MoCA Instrumentalities in connection with the Accused Services provided by Comcast, the end user directly infringes at least claim 3 of the '910 Patent. The Accused MoCA Instrumentalities are therefore especially made or especially adapted for use in an infringing manner.

429.  Comcast's inducement of, and contribution to, the direct infringement of at least claim 3 of the '910 Patent has been, and is, continuous and ongoing through the acts described above in connection with Comcast's provision of the Accused Services.

430.  Comcast's infringement of the '910 Patent is, has been, and continues to be willful, intentional, deliberate, and/or in conscious disregard for Entropic's rights under the patent.

431.  Entropic has been damaged as a result of the infringing conduct alleged above. Comcast is liable to Entropic in an amount that compensates Entropic for Comcast's infringement, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

432.  Entropic is aware of no obligation to mark any instrumentality with the '910 Patent in accordance with 35 U.S.C. § 287.

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

## COUNT XI

### (Infringement of the '0,566 Patent)

433.   Entropic incorporates by reference each allegation of Paragraphs 1 through 432.

434.   The '0,566 Patent duly issued on November 27, 2012 from an application filed October 15, 2009, and, *inter alia*, a provisional application filed October 16, 2008.

435.   Entropic owns all substantial rights, interest, and title in and to the '0,566 Patent, including the sole and exclusive right to prosecute this action and enforce the '0,566 Patent against infringers, and to collect damages for all relevant times.

436.   The '0,566 Patent is the OFDMA Patent, and is generally directed to, *inter alia,* "allow[ing] multiple transmitting network devices to transmit under an orthogonal frequency divisional multiple access (OFDMA) mode to a receiving network device." '0,566 Patent, Abstract. The '0,566 Patent has 18 claims, of which claims 1, 7, 13, and 16 are independent. At least these claims of the '0,566 Patent are directed to a variety of techniques for assigning communication resources to one or more nodes in the MoCA network. A true and accurate copy of the '0,566 Patent is attached hereto as Exhibit U.

437.   The '0,566 Patent is directed to patent-eligible subject matter pursuant to 35 U.S.C. § 101.

438.   The '0,566 Patent is valid and enforceable, and presumed as such, pursuant to 35 U.S.C. § 282.

439.   Comcast deploys one or more of the Accused MoCA Instrumentalities (e.g. XG1-A, XG1v3, XG1v4, XG2v2, and Arris DCX3200, Arris MR150CNM, Pace PR150BNM, Pace PX032ANI, Pace PXD01ANI, and/or Samsung SR150BNM and similarly operating devices) in connection with operating and providing the Accused Services.

440.   The Accused MoCA Instrumentalities deployed by Comcast to customer premises remain the property of Comcast while deployed.

-59-

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

441.   The Accused MoCA Instrumentalities operate while deployed in a manner controlled and intended by Comcast.

442.   As set forth in the attached non-limiting claim chart (Exhibit V), any product or system operating in a MoCA network compliant with the charted provisions of MoCA 2.0 necessarily infringes at least claim 1 of the '0,566 Patent.

443.   Each aspect of the functioning of the Accused MoCA Instrumentalities described in the claim chart operates while deployed to customer premises in a manner controlled and intended by Comcast.

444.   Comcast provides no software, support or other facility to customers to modify any aspect of the functioning described in the claim chart of the Accused MoCA Instrumentalities while deployed to customer premises.

445.   The Accused MoCA Instrumentalities are compliant with MoCA 2.0, as described in the '0,566 Patent claim chart, Exhibit V.

446.   Comcast therefore directly infringes at least claim 1 of the '0,566 Patent by using the Accused MoCA Instrumentalities to provide Accused Services to customers.

447.   Comcast sells the Accused Services to its customers and subscribers for a fee. Pursuant to the sale of these services, Comcast uses the method recited in at least claim 1 of the '0,566 Patent to provide the Accused Services to Comcast's customers and subscribers through the Accused MoCA Instrumentalities. Comcast is therefore engaging in the infringing use of at least claim 1 of the '0,566 Patent in order to generate revenue from its customers and subscribers.

448.   Comcast directly infringes at least claim 1 of the '0,566 Patent when it, for example, uses the Accused MoCA Instrumentalities to test, demonstrate or otherwise provide Accused Services.

449.   Comcast had knowledge of the '0,566 Patent no later than its receipt of Entropic's communications sent to Comcast on August 9, 2022.

450.   Comcast has been aware that it infringes the '0,566 Patent no later than its receipt of Entropic's communication sent to Comcast on August 9, 2022.

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

451.  Comcast has known of or has been willfully blind to the '0,566 Patent since before the August 9, 2022 communications from Entropic.

452.  The '0,566 Patent issued while or before Comcast was a member of MoCA.

453.  Because of Comcast's knowledge of Entropic Inc.'s work and contributions related to MoCA technology, Comcast had knowledge of the '0,566 Patent before August 9, 2022 or was willfully blind to its existence.

454.  The claims of the '0,566 Patent are essential to practicing at least MoCA standards versions 1.1, and/or 2.0.

455.  Comcast knew, or was willfully blind to the fact that the technology of the '0,566 Patent directly relates to networking over coaxial cable, including MoCA, at least as early as Comcast became aware of the existence of the '0,566 Patent. Because of its familiarity with, and access to, the MoCA standards, Comcast knew, or was willfully blind to the fact, that use (by Comcast or its customers) of instrumentalities compliant with MoCA 1.1, and/or 2.0 to deliver Comcast services would necessarily infringe one or more claims of the '0,566 Patent.

456.  Since learning of the '0,566 Patent and its infringing activities, Comcast has failed to cease its infringing activities.

457.  Comcast's customers and subscribers directly infringe at least claim 1 of the '0,566 Patent by using the Accused MoCA Instrumentalities in connection with the Accused Services provided by Comcast.

458.  Comcast actively induces its customers' and subscribers' direct infringement by providing the Accused Services and associated support.

459.  For example, Comcast actively induces infringement of at least claim 1 of the '0,566 Patent by providing the Accused MoCA Instrumentalities to Comcast customers with specific instructions and/or assistance (including installation and maintenance) regarding the instantiation of a MoCA network and the use of the Accused MoCA Instrumentalities to infringe the '0,566 Patent.

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

460.   Comcast aids, instructs, supports, and otherwise acts with the intent to cause an end user to make and/or use the MoCA network and/or use the Accused MoCA Instrumentalities to infringe every element of at least claim 1 of the '0,566 Patent.

461.   Additionally, Comcast contributes to the customers' and subscribers' direct infringement. Comcast provides at least the Accused MoCA Instrumentalities that create and are at least substantially all of a MoCA network to be used to infringe at least claim 1 of the '0,566 Patent.

462.   The Accused MoCA Instrumentalities have no substantial noninfringing uses. When an end user uses the Accused MoCA Instrumentalities in connection with the Accused Services provided by Comcast, the end user directly infringes at least claim 1 of the '0,566 Patent. The Accused MoCA Instrumentalities are therefore especially made or especially adapted for use in an infringing manner.

463.   Comcast's inducement of, and contribution to, the direct infringement of at least claim 1 of the '0,566 Patent has been, and is, continuous and ongoing through the acts described above in connection with Comcast's provision of the Accused Services.

464.   Comcast's infringement of the '0,566 Patent is, has been, and continues to be willful, intentional, deliberate, and/or in conscious disregard for Entropic's rights under the patent.

465.   Entropic has been damaged as a result of the infringing conduct alleged above. Comcast is liable to Entropic in an amount that compensates Entropic for Comcast's infringement, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

466.   Upon information and belief, there is no duty to mark any instrumentality with the '0,566 Patent in accordance with 35 U.S.C. § 287(a).

## COUNT XII

### (Infringement of the '681 Patent)

467.   Entropic incorporates by reference each allegation of Paragraphs 1 through 466.

-62-

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

468.   The '681 Patent duly issued on January 29, 2013 from an application filed October 15, 2009 and, *inter alia*, a provisional application filed October 16, 2008.

469.   Entropic owns all substantial rights, interest, and title in and to the '681 Patent, including the sole and exclusive right to prosecute this action and enforce the '681 Patent against infringers, and to collect damages for all relevant times.

470.   The '681 Patent is the Clock Sync Patent, and is generally directed to, *inter alia,* improving local clock time synchronization between a plurality of nodes in a communication network. '681 Patent, Abstract. The '681 Patent has 40 claims, of which claims 1, 11, 21, and 31 are independent. At least these claims of the '681 Patent are directed to a variety of techniques for clock synchronization for nodes in the MoCA network. A true and accurate copy of the '681 Patent is attached hereto as Exhibit W.

471.   The '681 Patent is directed to patent-eligible subject matter pursuant to 35 U.S.C. § 101.

472.   The '681 Patent is valid and enforceable, and presumed as such, pursuant to 35 U.S.C. § 282.

473.   Comcast deploys one or more of the Accused MoCA Instrumentalities (e.g. XG1-A, XG1v3, XG1v4, XG2v2, and Arris DCX3200, Arris MR150CNM, Pace PR150BNM, Pace PX032ANI, Pace PXD01ANI, and/or Samsung SR150BNM and similarly operating devices) in connection with operating and providing the Accused Services.

474.   The Accused MoCA Instrumentalities deployed by Comcast to customer premises remain the property of Comcast while deployed.

475.   The Accused MoCA Instrumentalities operate while deployed in a manner controlled and intended by Comcast.

476.   As set forth in the attached non-limiting claim chart (Exhibit X), any product or system operating in a MoCA network compliant with the charted provisions of MoCA 2.0 necessarily infringes at least claim 1 of the '681 Patent.

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

477.  Each aspect of the functioning of the Accused MoCA Instrumentalities described in the claim chart operates while deployed to customer premises in a manner controlled and intended by Comcast.

478.  Comcast provides no software, support or other facility to customers to modify any aspect of the functioning described in the claim chart of the Accused MoCA Instrumentalities while deployed to customer premises.

479.  The Accused MoCA Instrumentalities are compliant with MoCA 2.0 described in the '681 Patent claim chart, Exhibit X.

480.  Comcast therefore directly infringes at least claim 1 of the '681 Patent by using the Accused MoCA Instrumentalities to provide Accused Services to customers.

481.  Comcast sells the Accused Services to its customers and subscribers for a fee. Pursuant to the sale of these services, Comcast uses the method recited in at least claim 1 of the '681 Patent to provide the Accused Services to Comcast's customers and subscribers through the Accused MoCA Instrumentalities. Comcast is therefore engaging in the infringing use of at least claim 1 of the '681 Patent in order to generate revenue from its customers and subscribers.

482.  Comcast directly infringes at least claim 1 of the '681 Patent when it, for example, uses the Accused MoCA Instrumentalities to test, demonstrate or otherwise provide Accused Services.

483.  Comcast had knowledge of the '681 Patent no later than its receipt of Entropic's communications sent to Comcast on August 9, 2022.

484.  Comcast has been aware that it infringes the '681 Patent no later than its receipt of Entropic's communication sent to Comcast on August 9, 2022.

485.  Comcast has known of or has been willfully blind to the '681 Patent since before the August 9, 2022 communications from Entropic.

486.  The '681 Patent issued while or before Comcast was a member of MoCA.

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

487.   Because of Comcast's knowledge of Entropic Inc.'s work and contributions related to MoCA technology, Comcast had knowledge of the '681 Patent before August 9, 2022 or was willfully blind to its existence.

488.   The claims of the '681 Patent are essential to practicing at least MoCA standards versions 1.1, and/or 2.0.

489.   Comcast knew, or was willfully blind to the fact that the technology of the '681 Patent directly relates to networking over coaxial cable, including MoCA, at least as early as Comcast became aware of the existence of the '681 Patent. Because of its familiarity with, and access to, the MoCA standards, Comcast knew, or was willfully blind to the fact, that use (by Comcast or its customers) of instrumentalities compliant with MoCA 1.1, and/or 2.0 to deliver Comcast services would necessarily infringe one or more claims of the '681 Patent.

490.   Since learning of the '681 Patent and its infringing activities, Comcast has failed to cease its infringing activities.

491.   Comcast's customers and subscribers directly infringe at least claim 1 of the '681 Patent by using the Accused MoCA Instrumentalities in connection with the Accused Services provided by Comcast.

492.   Comcast actively induces its customers' and subscribers' direct infringement by providing the Accused Services and associated support.

493.   For example, Comcast actively induces infringement of at least claim 1 of the '681 Patent by providing the Accused MoCA Instrumentalities to Comcast customers with specific instructions and/or assistance (including installation and maintenance) regarding the instantiation of a MoCA network and the use of the Accused MoCA Instrumentalities to infringe the '681 Patent.

494.   Comcast aids, instructs, supports, and otherwise acts with the intent to cause an end user to make and/or use the MoCA network and/or use the Accused MoCA Instrumentalities to infringe every element of at least claim 1 of the '681 Patent.

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

495.    Additionally, Comcast contributes to the customers' and subscribers' direct infringement. Comcast provides at least the Accused MoCA Instrumentalities that create and are at least substantially all of a MoCA network to be used to infringe at least claim 1 of the '681 Patent.

496.    The Accused MoCA Instrumentalities have no substantial noninfringing uses. When an end user uses the Accused MoCA Instrumentalities in connection with the Accused Services provided by Comcast, the end user directly infringes at least claim 1 of the '681 Patent. The Accused MoCA Instrumentalities are therefore especially made or especially adapted for use in an infringing manner.

497.    Comcast's inducement of, and contribution to, the direct infringement of at least claim 1 of the '681 Patent has been, and is, continuous and ongoing through the acts described above in connection with Comcast's provision of the Accused Services.

498.    Comcast's infringement of the '681 Patent is, has been, and continues to be willful, intentional, deliberate, and/or in conscious disregard for Entropic's rights under the patent.

499.    Entropic has been damaged as a result of the infringing conduct alleged above. Comcast is liable to Entropic in an amount that compensates Entropic for Comcast's infringement, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

500.    Upon information and belief, there is no duty to mark any instrumentality with the '681 Patent in accordance with 35 U.S.C. § 287(a).

## **JURY DEMAND**

Entropic hereby requests a trial by jury on all issues so triable by right.

## **PRAYER FOR RELIEF**

WHEREFORE, Entropic requests that:

A.    The Court find that Comcast has directly infringed the Patents-in-Suit and hold Comcast liable for such infringement;

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

B.     The Court award damages pursuant to 35 U.S.C. § 284 adequate to compensate Entropic for Comcast's past and future infringement of the Patents-in-Suit, including both pre- and post-judgment interest and costs as fixed by the Court;

C.     The Court increase any award to Entropic by a judicially appropriate amount;

D.     The Court declare that this is an exceptional case entitling Entropic to its reasonable attorneys' fees under 35 U.S.C. § 285; and

E.     The Court award such other relief as the Court may deem just and proper.

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

1    Dated: February 10, 2023                    Respectfully submitted,

2                                                By: */s/ Christina Goodrich*

3                                                Christina Goodrich (SBN 261722)
                                                 christina.goodrich@klgates.com
                                                 Connor J. Meggs (SBN 336159)
4                                                connor.meggs@klgates.com
                                                 K&L GATES LLP
5                                                10100 Santa Monica Boulevard
                                                 Eighth Floor
6                                                Los Angeles, CA 90067
                                                 Telephone: +1 310 552 5000
7                                                Facsimile: +1 310 552 5001

8                                                James A. Shimota *(pro hac vice forthcoming)*
9                                                jim.shimota@klgates.com
                                                 George C. Summerfield *(pro hac vice*
10                                               *forthcoming)*
                                                 george.summerfield@klgates.com
11                                               K&L GATES LLP
                                                 Suite 3300
12                                               70 W. Madison Street
                                                 Chicago, IL 60602
13                                               Tel.: (312) 372-1121
                                                 Facsimile: (312) 827-8000
14

15                                               Peter E. Soskin (SBN 280347)
                                                 peter.soskin@klgates.com
16                                               K&L GATES LLP
17                                               Four Embarcadero Center, Suite 1200
                                                 San Francisco, CA 94111
18                                               Telephone: (415) 882-8200
                                                 Facsimile: (415) 882-8220
19

20                                               Darlene F. Ghavimi *(pro hac vice forthcoming)*
                                                 darlene.ghavimi@klgates.com
21                                               K&L GATES LLP
22                                               2801 Via Fortuna, Suite #350
                                                 Austin, TX 78746
23                                               Telephone: (512) 482-6800
                                                 Facsimile: (512) 482-6859
24
                                                 *Attorneys for Plaintiff*
25                                               *Entropic Communications, LLC*

26

27

28

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT